EDDIE MOLINA, GENOVEVA CARO, ETC., demandantes y recurridos, *v.* MANUEL DÁVILA PARRILLA y su ESPOSA, ETC., demandados y recurrentes.

*Número:* RE-86-567 *Resuelto:* 17 de mayo de 1988

---

*Carlos Iván Díaz Díaz*, de *Canales Law Offices*, abogado de los recurrentes; *Miguel Quiñones Vázquez*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

La actividad social y comercial precisa de normas de derecho claras y estables que sirvan de guía a las actuaciones de la ciudadanía. Pero esa estabilidad es sólo la base de la obtención de la justicia —necesaria para la felicidad— que es el último objetivo del Estado.

> *"La seguridad jurídica exige que no sean demasiado frecuentes los cambios en la doctrina jurisprudencial. Para cerrar el paso a interminables disputas y por la fuerza del precedente, las sentencias judiciales sirven de norma para la decisión de litigios posteriores. Pero el deber de emitir fallos justos, válidos y objetivos nos impide alcanzar una estabilidad absoluta".*

Así se expresó el Tribunal Supremo de Puerto Rico en *Pueblo v. Torres*, 80 D[.]P[.]R[.] 245, 246 (1958) (Saldaña), reconociendo la deseabilidad de una interpretación uniforme que cree certidumbre y disipe dudas. Por eso ha dicho también que "*. . . la cirugía judicial para extirpar precedentes erróneos debe practicarse con cautela . . .*". *Hull Dobbs Co. v. Tribunal Superior*, 81 D[.]P[.]R[.] 221, 235 (1959) (Hernández Matos). Sin embargo, como el propósito de la actuación judicial es justicia, ha dicho también que *"es eminentemente deseable la estabilidad del derecho"*, pero que *"cuando este Tribunal decide que debe revocar un caso anterior, debe revocarlo solamente con carácter prospectivo si están envueltos en él derechos contractuales o de propiedad"*. *Agosto v. Javierre*, 77 D[.]P[.]R[.] 471, 472–473 (1954) (Opinión del Juez Snyder). Esto es así, porque según se dijo en *Mayagüez Lt. & P.I. Co. v. Tribunal de Contribuciones*, 65 D[.]P[.]R[.] 30, 35 (1945) (Snyder) "*. . . aquellos que han obtenido derechos de propiedad o de contratos, descansando en una decisión de una corte de última instancia pueden bajo ciertas circunstancias ser protegidos en sus derechos, no obstante la revocación posterior de la decisión en cuestión*".

Algunas reglas jurisprudenciales son creadas por consideraciones de política pública. Pero si las circunstancias que

produjeron su adopción varían, los tribunales deben formular las nuevas reglas que sean necesarias para que el derecho adelante al mismo ritmo que el cambio que experimenta la comunidad. Es decir, que las condiciones cambiantes de nuestra época, que es caracterizada por su gran dinamismo, requieren la actitud alerta de los tribunales para mantener el mismo paso con el resto de los organismos y funcionarios gubernamentales y los sectores activos de la sociedad. Véase *Texaco Inc. v. Srio. de Obras Públicas*, 85 D[.]P[.]R[.] 712, 729 (1962) (Rigau).

El Juez Rigau explica magistralmente el problema que plantea la necesidad que el derecho ofrezca seguridad y certeza y a la vez conserve la capacidad de evolucionar con los tiempos y de adaptarse a las nuevas realidades humanas. A esos efectos dijo en *Vda. de Fornaris v. Amer. Surety Co. of N.Y.*, 93 D[.]P[.]R[.] 29, 49–51 (1966):

> *"Esta evolución es necesaria para que el derecho, en cada época y lugar, sea justo. Es el derecho arte y ciencia para servir al hombre y no trampa para inmovilizarlo.*
>
> *"Este problema creado por la necesidad de que haya seguridad en la ley, de un lado, y de su desarrollo constante en busca de la justicia, del otro, es uno que ha ocupado a los filósofos y a los juristas desde la antigüedad pre-cristiana. Entre los modernos, es ya clásica la afirmación de Pound: 'El Derecho debe tener estabilidad y, sin embargo, no puede permanecer inalterable. Por ello, toda meditación en torno al Derecho ha tratado de reconciliar las necesidades contradictorias de estabilidad y transformación'. Castán lo ha expresado así: '. . . de un lado, requiere seguridad y certeza, y de otro, movilidad y posibilidades de adaptación a la realidad cambiante . . .'.*
>
> *"Naturalmente, el conflicto perenne que plantea la necesidad de estabilidad y cambio en el derecho no ha de ser resuelto permanentemente en nuestros días. El derecho, como ciencia social viva, comprende dentro de sí la anteriormente mencionada antítesis. Corresponde a cada generación lograr y mantener el balance necesario entre esas dos fuerzas para que el derecho opere con razonable efica-*

*cia"*. R.E. Bernier y J.A. Cuevas Segarra,(1) *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 22, págs. 189–190.

Por entender que la continua vigencia de la norma sentada en *Torres Pérez v. Medina Torres*, 113 D.P.R. 72 (1982), afirma la estabilidad del derecho y a su vez representa una solución justa y correcta en derecho, dejamos en vigor la compensación concedida a la madre de la demandante Elizabeth Molina Caro. Esta y otras importantes cuestiones de derecho presentes en este recurso justifican la presente opinión.

## I

La parte demandante y recurrida presentó demanda de daños y perjuicios contra los demandados y recurrentes en la que se alegaba, en síntesis, que el 7 de enero de 1986, mientras la menor Elizabeth Molina Caro, de 17 años de edad, intentaba cruzar la Calle Núm. 10 de la Urb. Villa Nevárez, en las inmediaciones de un parque de *softball*, fue impactada por un automóvil marca Volkswagen, modelo de 1969, conducido por el Sr. Manuel Dávila Parrilla. Además, se alegó que como consecuencia del impacto la menor sufrió fracturas múltiples en la pierna izquierda, fractura en la mandíbula superior, pérdida de varios dientes y hematomas en todo el cuerpo, por lo que tuvo que ser hospitalizada por once (11) días.

Luego de los trámites procesales correspondientes, incluso en la vista en su fondo y el examen de memorandos argumentativos, el tribunal de instancia llegó, entre otras, a las determinaciones siguientes:

---

(1) Dichos autores nos dan 261 ejemplos de casos en que hemos revocado nuestras propias decisiones: R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 22, págs. 161–189. Estos ejemplos nos demuestran que no podemos convertirnos en esclavos del precedente.

## II. DETERMINACIONES DE HECHOS:

. . . . . . . .

8. Del testimonio prestado por la co-demandante Elizabeth Molina Caro se desprende que esa noche del accidente había salido de casa de una amiga llamada Debbie y tomó la Calle # 10 cerca del parque para regresar a su casa pues admitió que aunque era la ruta más larga era también la más iluminada por las luces del parque de "softball" y había siempre gente en las cercanías. Declaró que fue a cruzar de izquierda a derecha en la Calle # 10 y que *pudo observar que de frente venía un carro porque tenía las luces encendidas. Aun as[í] siguió cruzando pues según su apreciación, el carro venía a una distancia prudente. Admitió que pudo haberse detenido en la otra mitad de la calle, pero que no lo hizo porque el carro no venía cerca.*

. . . . . . . .

11. Según el co-demandado Sr. Manuel Dávila Parrilla, la perjudicada se tiró a cruzar la calle en el [á]rea de arbolitos que bordean el parque de "softball". Aseguró y repitió que lo que vió fue "un bulto" saliendo de entre los arbolitos y que se le tiró al frente por el lado derecho de su autom[ó]vil. Aseguró también que no venía a exceso de velocidad y que su carro había hecho una marca de frenazo de no m[á]s de diez pulgadas. Informó que le había señalado la marca al Policía investigador. Describió también c[ó]mo había reducido la velocidad casi a cero al pasar la alcantarilla y luego a una distancia de como 60 ó 70 pies, se le apareció "el celaje", frenó y sintió instantáneamente el impacto. El cuerpo de la niña quedó recostado sobre el bonete de su "Volky" y luego se deslizó hacia el pavimento. También el Sr. Dávila declaró que es inspector de casinos para la C[í]a. de Fomento de Turismo. Había salido de su trabajo en el Hotel Condado Holiday Inn a eso de las 10:00 de la noche y afirmó que no se sentía mal ni cansado.

12. El policía que investigó el accidente fue el Pol. José Luis Díaz. Declaró que recibió una llamada sobre la ocurrencia del accidente y se personó al lugar. Cuando llegó al sitio, la ambulancia ya había transportado a la menor accidentada hasta el Hospital, pero el Sr. Dávila se encontraba en el [á]rea. Nos declaró el Pol. Díaz que el carro Volkswagen del co-demandado se encontraba en dirección de norte a sur en la Calle

# 10 de Villa Nevárez y que le informaron que dicho automóvil no había sido movido. Informó también que el [á]rea donde ocurrió el accidente no estaba completamente clara y que a la orilla de la acera que queda al lado del carril por donde transitaba el Sr. Dávila, habían [*sic*] árboles que impedían la visibilidad pues arrojaban mucha sombra. (Énfasis suplido.) *Exhibit* 4, págs. 5-10.

En sus conclusiones de derecho añadió lo siguiente:

En este caso, se nos mostraron unas fotografías de la Calle # 10 y el croquis a que nos referimos (Exh. II). La apariencia de la Calle # 10 es de una v[í]a recta, amplia y con clara visibilidad a pesar de que la acera contigua al parque está bordeada de arbustos. Entendemos que el demandado debió haber divisado a los lejos a la jovencita, pues de la prueba surge que ella, al cruzar, sí vio el carro de frente a cierta distancia de ella cuando cruzaba por encima de la alcantarilla.

2. Las disposiciones antes mencionadas de la Ley de Vehículos y Tránsito, vistas en conjunto, establecen un deber ineludible del que conduce vehículos de motor por las vías públicas de nuestro país, de evitar conducir con voluntario y malicioso desprecio por la seguridad de personas y propiedades así como el tomar precauciones para no arrollar a los peatones. Aun asumiendo, a base de lo declarado por la joven Molina Caro, que ella no calculó adecuadamente la distancia a la que el carro estaba de ella, no podemos olvidar que el demandado Sr. Dávila Parrilla transitaba por las inmediaciones de un parque iluminado donde se llevaba a cabo un juego. Por lo menos, debió haber asumido que habían personas en el [á]rea. La prueba no nos indica que hubiese venido a alta velocidad, pero sí que conducía con descuido, y negligencia y que no tomó en consideración la existencia del parque, el hecho obvio de que se estaba allí jugando y la fuerte posibilidad de peatones en las inmediaciones, especialmente jóvenes.

. . . . . . . .

Al momento de ocurrir el accidente que aquí nos ocupa, Li[z]a tenía 17 años de edad. Era miembro del equipo de "volleyball" de su escuela y se mantenía activa en otros deportes, lo que presupone que estaba en buenas condiciones físicas, ágil y saludable. Su aprovechamiento académico era satisfac-

torio y a pesar del accidente y los trastornos subsiguientes a éste, pudo terminar su año escolar. A base de la misma declaración que nos prestó entendemos que Li[z]a, tuvo tambi[é]n cierto grado de responsabilidad por el accidente. Nos dijo que vió de lejos el carro del Sr. Dávila. Debió haber apresurado el paso para terminar de cruzar la calle, en previsión de que el conductor viniese distraído y ajeno a su presencia, como entendemos sucedió. Su edad y las condiciones que ya hemos señalado nos inclinan a concluir que incurrió en negligencia en un 25%. *Exhibit* 4, págs. 16–20.

Con apoyo en tales determinaciones el tribunal de instancia dictó sentencia que condena a la parte demandada al pago de $40,000 para la codemandante Elizabeth Molina Caro por sus daños. De esa cantidad se le descontó $1,000 a tenor con la Sec. 8 de la Ley de Protección Social por Accidentes de Automóviles, Ley Núm. 138 de 26 de junio de 1968 (9 L.P.R.A. sec. 2008). Del remanente se le dedujo el 25% de negligencia que le imputó a la codemandante Molina Caro. A la madre, señora Caro, se le concedió la cantidad de $10,000.00 por sus sufrimientos y angustias mentales más $550 de gastos médicos incurridos por ella. Se impuso, además, al demandado el pago de $3,000 en concepto de honorarios de abogado.

Acude ante nos el demandado para hacer los siguientes señalamientos de errores:

A) *Primer Señalamiento de Error:*
Erró el Tribunal de Instancia en imputarle negligencia a la parte demandada recurrente o en la alternativa, erró en su determinación de imputarle solamente un veinte y cinco porciento (25%) de negligencia comparada a la co-demandante Elizabeth Molina Caro.

B) *Segundo Señalamiento de Error:*
Erró el Tribunal de Instancia en la cuantía de la compensación concedida a las co-demandantes Elizabeth Molina Caro y Genoveva Caro.

C) *Tercer Señalamiento de Error:*

Erró el Tribunal de Instancia en la imposición de honorarios de abogado a ser pagados por la demandada. Solicitud de revisión, pág. 4.

Examinada la solicitud de revisión y su apéndice emitimos resolución en la que se ordenaba a la parte recurrida que mostrara causa por la cual no debíamos expedir el auto, modificar la sentencia recurrida que aumenta el por ciento de responsabilidad por negligencia atribuida por el tribunal de instancia a la recurrida Elizabeth Molina Caro y, así modificada, confirmarla. La parte recurrida ha comparecido.

## II

La posición del demandado y recurrente, "a los efectos de que entendemos que no hubo negligencia del codemandado Manuel Dávila Parrilla", está fundada principalmente en "el hecho de que no existió ninguna *scintilla* de prueba, a los efectos de que el codemandado Manuel Dávila Parrilla al momento de ocurrir los hechos, estaba violentando alguna de las leyes de tránsito del Estado Libre Asociado de Puerto Rico, y aún más, de la propia sentencia se desprende el hecho de que no hubo prueba de que el demandado conducía a alta velocidad. Véase *Exhibit* 4, pág. 17. No tiene razón.

Es abundante nuestra jurisprudencia sobre el deber de cuidado que deben observar los conductores de vehículos de motor cuando transitan por las vías públicas. Aflora inequívoca de nuestra jurisprudencia la norma de que un conductor de vehículo de motor debe ser particularmente cuidadoso cuando se aproxima a un lugar donde se encuentren menores, medido por el mayor peligro involucrado, en vista de que éstos tienen una reducida capacidad de reflexión, que actúan de acuerdo con sus instintos e impulsos infantiles o juveniles. En el cumplimiento de ese deber, el conductor debe mantenerse alerta en todo momento y obser-

var la debida vigilancia hacia ellos. El deber de mantener tal vigilancia implica ver todo lo que está a plena vista o que pudo haber sido visto en la dirección en que viaja, mediante el ejercicio de cuidado razonable. *Díaz v. Stucker Motor Co.*, 74 D.P.R. 519 (1953); *Álvarez v. Hernández*, 74 D.P.R. 493 (1952). Debe advertirse que tal deber de vigilancia se extiende no sólo hacia el frente, sino también oblicuamente. El conductor debe estar alerta a la presencia de menores dentro de su visibilidad periférica o lateral. *Figueroa v. Picó*, 69 D.P.R. 401 (1948). El hecho de dar cumplimiento a todas las disposiciones de ley aplicables como lo son la velocidad, obedecer las señales, etc., no exime al conductor de ejercer un grado de cuidado que le permita anticipar razonablemente la probabilidad de un accidente, *Álvarez v. Hernández*, supra, especialmente cuando se trata de un lugar donde transitan niños, al existir, pues, circunstancias especiales en las que el mero cumplimiento de las normas escritas no constituye suficiente precaución.

En este caso como el accidente ocurrió en una calle contigua a un área recreativa en donde hay un parque de *softball* y una cancha de baloncesto, en cuyo sitio y hora había jóvenes jugando y compartiendo, el deber de cuidado y previsibilidad se acrecenta. No podemos acoger los argumentos del recurrente según los cuales él no fue negligente en ningún caso. El propio recurrente declaró que vió como un "bulto", el "celaje" de algo que salía de entre los arbolitos hacia la carretera. Si se hubiera detenido, como alega haberlo hecho, en ese momento, no hubiese impactado a la menor.

Sin embargo, convenimos con el recurrente de que dadas las circunstancias de la carretera, "el área donde ocurrió el accidente no estaba completamente clara", "había árboles que impedían la visibilidad pues arrojaban mucha sombra", y la edad de la menor, la demandante Molina Caro fue negligente en un grado mayor al 25% cuando intentó cru-

zar la calle, a pesar de que sabía que se aproximaba un vehículo de motor. A una adolescente de 17 años sí puede imputársele responsabilidad por sus actos. A esa edad tiene la prudencia, atención y discreción para evitar colocarse en situaciones de peligro para su seguridad y se le requiere que cumpla con las normas de conducta que es razonable esperar de un adulto. En *Colón Alvarado v. Corp. Mpal. de Barranquitas*, 93 D.P.R. 63, 65–66 (1966), señalamos:

> Ahora bien, el relato que hemos hecho del accidente señala que el joven lesionado fue imprudente al colocarse en una situación de peligro. No se trata de un niño de tierna edad sino de un mozalbete de 16 años que conocía y estaba familiarizado con la forma en que funcionaba el tractor.

Este tribunal ha reconocido que existen muchos peligros, tales como el fuego, el agua o la altura, los cuales, en circunstancias normales, razonablemente se anticipa que sean cabalmente comprendidos y conocidos por cualquier niño que tenga suficiente entendimiento. *Díaz Colón v. Autoridad de Tierras*, 96 D.P.R. 42 (1968); *Vargas Rodríguez v. Fuentes Fluviales*, 86 D.P.R. 104 (1962). En *Díaz Colón v. Autoridad de Tierras*, supra, pág. 46, señalamos que "[c]iertamente un niño de trece años y medio reconoce el peligro que esos elementos envuelven para la vida humana". La demandante Molina Caro, a los 17 años de edad, acostumbrada a cruzar carreteras, debió prever el peligro de lanzarse a cruzar una calle a sabiendas de que se aproximaba un automóvil, y debió haber reconocido, identificado y entendido el riesgo o peligro particular involucrado en la situación y aun así decidió asumir tal riesgo o peligro. La totalidad de los hechos y el balance más racional, jurídico y justiciero aconseja que modifiquemos la sentencia imponiéndole el sesenta por ciento (60%) de negligencia a Elizabeth Molina y el cuarenta por ciento (40%) al conductor. Esta proporción se ajusta más a la realidad del caso y resulta más razonable que la expuesta en la sentencia de instancia.

# III

█ La cantidad concedida a la codemandante madre de la menor no tiene que ser reducida. Este tribunal ha resuelto que "no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, *a menos que la negligencia de este último pudiera imputarse al primero*". (Énfasis suplido.) *Torres Pérez v. Medina Torres*, 113 D.P.R. 72, 79 (1982). Véanse: *Flores v. F. & J.M. Carrera, Inc.*, 83 D.P.R. 332 (1961); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357, 370 (1982). Aquí no hubo prueba de negligencia de la madre. La negligencia de la hija menor no puede imputársele a ella.

█ Al así resolver reiteramos la norma sentada en *Torres Pérez v. Medina Torres*, supra, donde expresamente revocamos la norma contraria establecida en *Quintana Martínez v. Valentín*, 99 D.P.R. 255 (1970). Nos persuade, aparte del razonamiento expuesto en *Torres Pérez v. Medina Torres*, supra, el siguiente análisis del tratadista H.M. Brau Del Toro en su obra *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, Vol. II, Cap. IX, págs. 557–559, de la cual citamos el siguiente lenguaje:[2]

> Fundándonos en las sentencias posteriores de *Castro v. Supermercad[o] de Descuentos*, 99 D.P.R. 851 (1971); *Security Ins[.] Co. v. Tribunal Superior*, 101 D.P.R. 191 (1973), y *Torres Pérez v. Colón García*, 105 D.P.R. 616 (1977)[,] y muchas otras —en los que el Tribunal Supremo hace expresiones que confirman la norma tradicional sobre la responsabilidad íntegra de los cocausantes solidarios—, hace varios años expresamos que, a nuestro juicio, la doctrina clásica continuaba

---

[2] Véase H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pubs. J.T.S., 1986, Vol. I, págs. 415–417.

vigente y que la regla de *Quintana Martínez v. Valentín*[, 99 D.P.R. 255 (1970)] era *una norma especial, limitada en su aplicación a las circunstancias del mismo.*

Posteriormente, en *Torres Pérez v. Medina Torres*[, 113 D.P.R. 72 (1982)], el Tribunal Supremo revocó el citado caso de *Quintana Martínez v. Valentín*, [supra] al resolver que la negligencia de la madre de una niña víctima de un accidente no es imputable a la niña ni a su padre, quien no estaba presente en el lugar de los hechos, por lo que no procede rebajar las cuantías de las indemnizaciones concedidas a éstos. No obstante, habiendo la madre de la niña faltado a su obligación de vigilarla adecuadamente y habiendo por tanto contribuido de manera eficiente a la ocurrencia del accidente, el Tribunal adjudicó en un 50% la negligencia concurrente de la madre y redujo proporcionalmente la indemnización de ésta. En el escolio 1 de la Opinión el Tribunal expresó que el caso *Quintana Martínez v. Valentín*, [supra], en cuanto se aparta de esta norma, debe considerarse revocado.

La madre de una niña de cuatro años le permitió a ésta cruzar sola la calle para comprar un mantecado de un vendedor ambulante. La niña fue arrollada por el vehículo de motor en que se vendían los mantecados. Sufrió serios daños. El Tribunal Superior responsabilizó totalmente por el accidente y los daños correspondientes al expendedor de mantecados. Concedió daños de $35,000 para la niña y $5,000 para cada uno de sus padres por angustias mentales. La parte demandada recurrió al Tribunal Supremo en procedimiento de revisión alegando que la prueba no estableció la conclusión del [t]ribunal de instancia de que el accidente se debió a la negligencia del conductor del vehículo al no ejercer el debido cuidado y prudencia al reiniciar su marcha después de servirle el mantecado a la niña; que la causa del accidente debió atribuirse a la negligencia de la madre y que debieron deducirse los $1,000.00 de la indemnización concedida a la víctima conforme a la Ley de Protección Social sobre Accidentes de Automóviles, 9 L.P.R.A. [sec.] 2058(3)(b).

En cuanto a la negligencia del conductor del vehículo concluyó el Tribunal que las circunstancias en que se encontró a la niña entre las ruedas delanteras y traseras del vehículo, las lesiones que sufrió, y el hecho de que el vehículo permaneció

todo el tiempo con su motor encendido no permiten otra inferencia que la conclusión del [t]ribunal de instancia de que el accidente se produjo al reiniciar la marcha el vehículo. Señala el Tribunal Supremo que un vehículo expendedor de mantecados es especialmente atractivo a los niños. El conductor en este caso le vendió un mantecado a la niña que a su corta edad no podía percatarse del peligro que entrañaba colocarse cerca de las ruedas del vehículo. Consciente de su presencia en las cercanías del vehículo, su conductor tenía el deber de asegurarse antes de reiniciar la marcha que la niñita estaba fuera del alcance de sus ruedas. Véanse *Rivera Matos v. Amador*, 86 D.P.R. 856 (1962), y *Castro v. González*, 58 D.P.R. 368 (1941).

En cuanto a la conducta de la madre de la niña, concluyó el Tribunal Supremo que ésta faltó a su obligación de vigilarla debidamente y su actitud permisiva al dejarla cruzar la calle sola, no obstante su corta edad, para acercarse al vehículo de motor, contribuyó de manera eficiente a la ocurrencia del accidente. El Tribunal Supremo determinó que la negligencia concurrente de la madre corresponde a un 50% de la negligencia que produjo el accidente.

En cuanto a la imputación a la niña de la negligencia de la madre, expresó el Tribunal Supremo que a una niña de cuatro años de edad no puede imputársele responsabilidad por sus propios actos ya que a esa edad una niña no tiene "la prudencia, atención y discreción" para evitar colocarse en situaciones de peligro para su seguridad, y "no se le requiere que cumpla con las normas de conducta que es razonable esperar de un adulto". *Torres Trumbull v. Pesquera*, 97 D.P.R. 338 (1969); [*Hernández v. Acosta*], 64 D.P.R. 171 (1944). Véanse[,] además[,] los antes citados casos de *Rivera Matos v. Amador*, y *Castro v. González*. Añadió el Tribunal Supremo que tampoco puede imputársele a un niño la negligencia de sus padres. En nuestro Derecho, los casos de responsabilidad vicaria, esto es, la de aquéllos a quienes se puede imponer responsabilidad por la culpa o negligencia de otros, están taxativamente enumerados en el Art. 1803 del Código Civil, 31 L.P.R.A. [sec.] 5142. La doctrina estima unánimemente que dicha enumeración es taxativa y no a título de mero ejemplo. Asimismo, en el Derecho angloamericano se ha abandonado la norma —"regla bárbara" como la llama Prosser— que por mucho tiempo impidió

que un niño fuera indemnizado por culpa o negligencia del demandado si su padre o madre contribuyó al accidente con su propia culpa o negligencia. Esta norma ha sido abolida en todos los estados de la Unión con excepción de Maine, por estatutos o por decisiones jurisprudenciales, y aun en Maine, señala Prosser, no parece probable que sobreviva mucho tiempo. Añade el Tribunal Supremo que la doctrina de negligencia contribuyente que estuvo vigente en Puerto Rico durante muchos años luego de ser adoptada jurisprudencialmente, y que nunca debió tener vigencia aquí pues nuestro Derecho de daños es de estirpe civilista y no angloamericana, fue derogada estatutariamente por la Ley Núm. 28 d[e] 9 de junio de 1956 al enmendarse el Art. 1802, del Código Civil incorporando en este precepto la doctrina de negligencia comparada o concurrencia de culpas, la que es harto conocida del Derecho Civil. Añadimos nosotros que es necesario notar, como implica la Opinión, que en el Derecho angloamericano el impedimento a que el niño fuera indemnizado —la llamada "regla bárbara"— surgía por el efecto combinado de la doctrina de *negligencia imputada* unida a la de *negligencia contribuyente* —según la cual un demandante que hubiese incurrido en algún grado de negligencia concurrente, por insignificante que éste fuese, estaba impedido de obtener indemnización— y no exclusivamente por efecto de la doctrina de *negligencia imputada.*

Añade el Tribunal Supremo que tanto bajo el Derecho Civil como bajo el Derecho angloamericano la negligencia de la madre al descuidar su deber de vigilancia sobre su hija no puede perjudicar el derecho de ésta de ser resarcida por los daños sufridos. *Siendo solidaria la obligación de los co-causantes del daño, los demandados-recurrentes vienen obligados a indemnizar a la niña por la totalidad de sus daños.*

. . . . . . . .

El Tribunal Supremo concurre con el análisis hecho en *Flores v. F[.] & J.M. Carrera, Inc.*, 83 D.P.R. 3[3]2 (1961), en cuanto a que no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurra otro co-demandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero. En dicho caso, al ratificar la norma de que la negli-

gencia del conductor de un vehículo no es imputable a su pasajero, se resolvió por el Tribunal Supremo que éste tenía derecho a ser resarcido por la aseguradora del otro vehículo en la totalidad de los daños por él sufridos, dada la solidaridad de la obligación entre los cocausantes del daño, independientemente de que la indemnización correspondiente al conductor del vehículo en que viajaba fuera reducida en proporción a su negligencia contribuyente. La misma regla aplica en este caso.

Además, el Tribunal determinó que siendo la niña la víctima del accidente deberá deducirse de su indemnización por daños personales la cantidad de $1,000.00, de conformidad con la Ley de Protección Social por Accidentes de Automóviles.

## ■ Añade dicho comentarista que:

Respetuosamente creemos que la Opinión del Tribunal Supremo en este caso sostiene la posición que hemos expuesto en párrafos anteriores en torno a la norma adoptada en *Quintana Martínez v. Valentín*, [supra], la que, como hemos visto, debe considerarse revocada. Sin embargo, es necesario destacar que existen otros problemas jurídicos que derivan de la situación de hechos y de Derecho del caso que examinamos. Deberá tenerse en cuenta que habiendo el Tribunal Supremo concluido que el demandado y la madre de la niña fueron coautores solidarios del evento dañoso, incursos en un 50% de la negligencia cada uno, y habiendo dicho demandado (o su aseguradora)·pagado la totalidad de la sentencia, puede éste, bajo las disposiciones del Art. 1098 del Código Civil y al amparo del cuerpo de jurisprudencia vigente que reconoce el derecho a *nivelación* o *contribución*, iniciar acción civil judicial contra la madre de la niña dentro del término de un año de la fecha en que la sentencia del Tribunal Supremo advenga final y firme, reclamando de ésta un 50% de las indemnizaciones que tuvo que pagar a la niña y al padre de ésta. Nótese que ésta no sería una acción en daños de la niña ni del padre contra la madre y esposa, la que estaría impedida por la doctrina que rechaza acciones en daños entre los miembros del círculo íntimo de la familia. Véase el capítulo XIV de esta obra. (Énfasis en el original.)

En cuanto a este último aspecto hemos resuelto que el derecho de nivelación puede ser invocado y utilizado dentro del mismo pleito. *Ramos Acosta v. Caparra Dairy Inc.*, 116 D.P.R. 60, 62–64 (1985).

Hemos ponderado con sumo cuidado los criterios contrarios expuestos por los ilustrados jueces disidentes. Aunque respetables, somos de opinión que no hay fundamento jurídico para revocar, alterar, modificar o distinguir la doctrina sentada en *Torres Pérez v. Medina Torres*, supra, y en las dos opiniones *Ramos Acosta v. Caparra Dairy, Inc.*, supra, y *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985). Estimamos que en las mismas decisiones se sigue una correcta interpretación del derecho aplicable.[3]

El disenso parte de una premisa equivocada. En *Torres Pérez v. Medina Torres*, supra, el Tribunal se enfrentó a dos situaciones de hechos y de derecho distintas e independientes entre sí. Nos explicamos.

En primer lugar, allí consideramos y resolvimos el efecto de la relación de la madre y la hija, y cómo su participación en los hechos afectaba sus respectivos derechos a ser compensados. A esos efectos resolvimos que:

> No puede tampoco imputársele al niño la negligencia de sus padres. Los casos de responsabilidad vicaria, es decir, la de aquellos a quienes se puede imponer responsabilidad por la culpa o negligencia de otros, están taxativamente enumerados en el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142. La doctrina estima unánimemente que dicha enumeración es taxativa y no a título de mero ejemplo. C. Rogel Vide, *La Responsabilidad civil extracontractual en el Derecho español*, Editorial Civitas, S.A., 1977, pág. 127; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1956, T. II,

---

[3] La propia parte recurrente así lo admite, al exponer en su escrito de revisión que la negligencia comparada, según lo establece la jurisprudencia, no es aplicable a quien no puede imputársele negligencia. Solicitud de revisión, págs. 14–15.

Vol. II, pág. 687; J. Castán, *Derecho Civil Español, Común y Foral*, 1977, T. 4, pág. 908. Puig Brutau, *op cit.*, dice que dicha enumeración es una "precisión, en serie cerrada". Y Castán, *op. cit.*, refiriéndose al Art. 1.903 del Código Civil español, equivalente al 1803 del nuestro dice:

"El texto del art. 1.903, en su apartado 1°, al aludir a un *deber de responder* por los actos de otras personas, da a entender que para que exista esta responsabilidad se requiere una declaración del legislador y que, consiguientemente, los supuestos establecidos por los siguientes apartados de este mismo artículo *son limitativos y no pueden aplicarse a casos diversos*." (Énfasis suplido.)

En el Derecho angloamericano, bajo la doctrina de negligencia contribuyente, se mantuvo por mucho tiempo la norma de impedir que un niño fuera indemnizado por daños sufridos por culpa o negligencia del demandado si su padre o madre contribuyó al accidente con su propia culpa o negligencia. Esta "regla bárbara", como la llama Prosser, fue abolida en Inglaterra, *Oliver v. Birmingham & Midland Omnibus Co.*, 1 K.B. 35 (1933), y ha sido abolida en todos los Estados de la Unión, con excepción de Maine, por estatutos o por decisiones jurisprudenciales. Aun en Maine, sigue señalando Prosser, no parece probable que sobreviva mucho tiempo. Prosser, *Law of Torts*, 4ta. ed., Sec. 74, pág. 490.

La doctrina de negligencia contribuyente, que estuvo vigente en Puerto Rico durante muchos años, fue derogada estatutariamente por la Ley Núm. 28 de 9 de junio de 1956 al enmendarse el Art. 1802 del Código Civil para añadirle que "La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". Véase *Torres Trumbull* v. *Pesquera*, supra, en las págs. 347–348. La doctrina de negligencia contribuyente, adoptada jurisprudencialmente, nunca debió tener vigencia aquí, pues nuestro Derecho de daños es de estirpe civilista y no angloamericana. Véase *Ramos* v. *Carlo*, 85 D.P.R. 353, 365–369 (1962). La doctrina de negligencia comparada o concurrencia de culpas, introducida por la enmienda al Art. 1802, es doctrina harto conocida del Derecho civil. Consúltense Rogel Vide, *op. cit.*, pág. 91; Gullon, *Contratos en especial—Responsabilidad extracontractual*, Madrid, 1968; Puig Brutau, *op. cit.*, T. II, Vol. II, pág. 686 y las citas que allí hace de Castán y

de Pérez González y Alguer; J. Santos Briz, *El Derecho de daños*, Madrid, Ed. Rev. de Derecho Privado, 1963, págs. 63–70; J.M. Manresa, *Código Civil Español*, 6ta. ed., Madrid, Ed. Reus, 1973, T. XII, pág. 857.

En síntesis, tanto bajo el Derecho civil como bajo el Derecho angloamericano, la negligencia de la madre al descuidar su deber de vigilancia de su hija no puede perjudicar el derecho de ésta de ser resarcida por los daños sufridos. Siendo solidaria la obligación de los co-causantes del daño, los demandados y aquí recurrentes vienen obligados a indemnizar a la niña por la totalidad de sus daños. *Torres* v. *A.M.A.*, 91 D.P.R. 714, 717 (1965), y casos allí citados. *Torres Pérez v. Medina Torres*, supra, págs. 76–78.

 Una vez resuelta esta primera interrogante es que consideramos cómo se afectaba el derecho del padre y esposo. A esos efectos señalamos y resolvimos que:

Examinemos el aspecto de imputabilidad de la negligencia de la madre de la niña a su esposo y padre de ésta.

En *Robles Ostolaza* v. *U.P.R.*, 96 D.P.R. 583, 597 (1968), resolvimos que la indemnización que corresponde a uno de los cónyuges por concepto de daños y perjuicios físicos y morales es un bien privativo suyo. De ser ganancial, podría imputársele a la sociedad legal de gananciales la negligencia concurrente de la esposa. Pero no lo es. De no mediar otro vínculo de solidaridad entre el padre y la madre de la niña, como lo sería el hecho de que aquél hubiese contribuido en alguna forma a la ocurrencia del accidente, no puede imputársele responsabilidad. Aquí, la prueba estableció que la niña estaba con su madre cuando se produjo el accidente. El padre no estaba allí. No puede imputársele negligencia concurrente con la madre al permitir que la niña cruzara la calle sola y se acercase al vehículo en que se vendían mantecados.

El mero hecho de que exista un vínculo marital no justifica que el padre sufra una reducción en su compensación privativa por actuaciones negligentes de su esposa, no consentidas por él.

La norma que permite imputar la negligencia de uno de los cónyuges al otro, por razón del matrimonio, ha sido abandonada en casi la totalidad de las jurisdicciones norteamericanas. Prosser, *op. cit.*, pág. 489, señala:

"Otra vieja regla imputaba la negligencia contribuyente de un cónyuge al otro, por la sola razón de la relación marital. Su origen descansaba en la identidad legal entre la esposa y el esposo en el Derecho común, que significaba que cada uno respondía de la negligencia del otro, y que el resarcimiento por uno de ellos beneficiaba al otro. En todos los estados las Leyes de Mujeres Casadas [*Married Women's Acts*] hace tiempo que dieron por terminada esta identidad legal, y permiten que la esposa demande por daños personales en su propio nombre, sin unir a su esposo en la acción. Como resultado se considera a la esposa como un individuo separado, cuya negligencia no habrá de atribuirse a su esposo, ni la de él a ella, como en el caso de cualquier otra persona; y la imputación de negligencia contribuyente por razón del matrimonio y nada más ha desaparecido de la ley en la mayoría de las jurisdicciones. La única excepción se halla en el caso de una o dos jurisdicciones que, bajo la influencia del Derecho civil, consideran que la indemnización por daños recobrable por uno de los cónyuges es un bien ganancial, y en consecuencia continúan imputando la negligencia del uno al otro para evitar que la parte negligente se beneficie, como parte de la comunidad ganancial, de su propia actuación dañosa."

Como señaláramos, aunque en nuestra jurisdicción se consideran gananciales los bienes adquiridos durante la vigencia del matrimonio, la indemnización que corresponda a un cónyuge por sus daños personales físicos y morales es un bien privativo suyo. *Robles Ostolaza* v. *U.P.R.*, supra.

Concurrimos con el análisis hecho en *Flores* v. *F. & J.M. Carrera, Inc.*, 83 D.P.R. 332 (1961), en cuanto a que no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero. Allí la negligencia combinada de los conductores de dos vehículos causó daños a una persona que viajaba como pasajero en uno de ellos. Éste y el conductor del vehículo en que viajaba demandaron a la aseguradora del otro vehículo. Al ratificar la norma de que la negligencia del conductor de un vehículo no es imputable a su pasajero, resolvimos que éste tenía derecho

a ser resarcido por la aseguradora del otro vehículo en la totalidad de los daños por él sufridos, dada la solidaridad de la obligación entre cocausantes del daño, independientemente de que la indemnización correspondiente al conductor del vehículo en que viajaba fuera reducida en proporción a su negligencia contribuyente.

La misma regla aplica aquí. La indemnización por los daños morales sufridos por la madre de la niña será reducida en proporción a su grado de negligencia, mas no así la indemnización que corresponde al padre, a quien no le es imputable la negligencia contribuyente de su esposa. *Torres Pérez v. Medina Torres*, supra, págs. 78–80.

Visto lo anterior, nos parece claro que la distinción que se pretende hacer entre éste y el caso de *Torres Pérez v. Medina Torres*, supra, parte de un análisis equivocado. La razón de ser de la regla que allí sentamos no tenía una relación directa con la falta de imputabilidad de la menor. Lo que resolvimos es que el padre no puede ser afectado por la negligencia contribuyente de la esposa y madre de la menor perjudicada. Analizada la misma sentamos la norma adecuada, justa y equitativa y procedimos a revocar la anterior de *Quintana Martínez v. Valentín*, supra.

En conclusión, en *Torres Pérez v. Medina Torres*, supra, resolvimos que como el padre no fue negligente ni respondía por los actos negligentes de su esposa, su compensación no debía ser afectada. Lo compensamos por los daños realmente sufridos. En el caso ante nos, la madre demandante tampoco fue negligente ni responde por las actuaciones de su hija. Por esa razón también debe ser compensada por los daños realmente sufridos.

Es obvio que los precedentes y normas que adoptemos deben tener un resultado justo y equitativo. Pero no se nos ha convencido de que el precedente de *Torres Pérez v. Medina Torres*, supra, sea injusto e inequitativo. La opinión disidente da unos ejemplos que, a nuestro juicio, son desacertados e irrealistas. Por ejemplo, señala lo siguiente:

Por el contrario, en la segunda situación de hechos antes señalada —aquella en que el "perjudicado directo" contribuye con su negligencia a la ocurrencia del daño por él sufrido— la causa de acción o derecho del "perjudicado indirecto" a recobrar por sus daños se verá proporcionalmente afectada por el por ciento de negligencia en que incurrió el "perjudicado directo"; esto es, la suma de dinero en que sean valorados sus daños será reducida en el por ciento de negligencia en que incurrió el "perjudicado directo". Dicho de otra forma, en esta clase de situaciones el derecho a resarcimiento que tiene el "perjudicado indirecto" *depende* del derecho que tenga el "perjudicado directo" *por cuanto este último es un cocausante del daño. La prueba de la corrección de lo anteriormente expresado está en que si el "perjudicado directo" resulta ser el cien por ciento responsable de la situación que dio lugar a la ocurrencia de sus daños, el "perjudicado indirecto" no tendrá causa de acción alguna contra la otra persona envuelta en la situación.* (Énfasis suplido y en el original.) Opinión disidente, págs. 402–403.

No podemos coincidir con la validez de esa analogía. Si el "perjudicado directo" es cien por ciento responsable, no entra en juego ninguna de las doctrinas bajo consideración. Cuando citamos de la opinión concurrente del Juez Asociado Señor Ortiz en *Irizarry v. Pueblo*, 75 D.P.R. 786, 799–816 (1954), lo que ocurre en esos casos es que:

Precisamente, en aquellos casos en que la negligencia del demandante es la única causa del accidente, no hay necesidad ni margen para invocar la doctrina de negligencia contributoria, ya que, en tal caso, el demandado nunca sería responsable, independientemente de la negligencia del demandante. James, ob. cit, 62 Yale L.J. 697.

. . . . . . . .

Debemos distinguir aquellos casos en que se ha resuelto que un demandado no es responsable si él no ha sido en absoluto negligente o si ha mediado un suceso fortuito o imprevisible, o resultado de una emergencia súbita. Nuestro problema se refiere al caso en que ambas partes han sido negligentes, y en que la negligencia contribuyente de la víctima ha sido de me-

nor magnitud que la del demandado, y su participación en la c[au]sación del accidente ha sido menor que la del demandado. Es cierto que en varios casos el Tribunal Supremo de España ha resuelto que un demandado no responde cuando el mal se ha producido por causa directa imputable al perjudicado (sentencia de 13 de octubre de 1927), o cuando la negligencia del perjudicado es la causa mediata o inmediata del accidente. Sentencia de 6 de julio de 1918. Pero nuestro artículo 1802 (1902 de España), no se expresa en términos de causa directa o inmediata. No determina que un demandado es responsable solamente cuando su negligencia sea la causa inmediata o directa del daño. Se limita a decir que un demandado responde por el daño causado por él. [É]l puede causar cierta cuantía de daños aun si hubo otra causa más directa e inmediata. Su acto no deja de ser una causa por el hecho de la coexistencia de otra causa posterior en el tiempo y en el espacio. El artículo 1802 no exige que la actuación del demandado sea la *única* causa del accidente. Basta con que sea *una* causa que produzca daño, y el daño que él debe reparar debe ser medido en proporción a la magnitud y grado de *su* causa, en la producción del accidente. Ya hemos visto que, como cuestión de realidad física, un suceso puede ser ocasionado por distintas causas coexistentes. El propio Tribunal Supremo de España ha rechazado, con posterioridad a los casos citados, todos esos conceptos filosóficos sobre "causa inmediata o directa", "causa como condición necesaria antecedente" o "sine qua non" y "causa predominante y excluyente", y ha resuelto que debe corresponder a los tribunales el determinar cuáles han sido las causas, como cuestión de hecho físico y real, y comprobar la aportación de cada causa, debiendo tener en cuenta los tribunales *el pensamiento compensador de la ley* al fijar la i[n]demnización. (Énfasis en el original.)

Por último, la experiencia demuestra que el ejemplo de casos en que se adjudique la responsabilidad del demandado en un mínimo de diez por ciento, no refleja la realidad adjudicatoria de los tribunales de instancia. Usualmente los por cientos son adjudicados en una proporción más realista. Para llegar a la determinación correcta hemos sen-

tado pautas adecuadas. Brau Del Toro las resume en la forma siguiente:

Así, pues, para determinar la negligencia que corresponde a cada parte en casos de negligencia comparada es necesario analizar y considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante.

En cuanto a la importancia de los precedentes en relación a la determinación de la porción de la negligencia o la responsabilidad que en tales casos corresponde a cada parte, el Tribunal Supremo añadió lo siguiente:

"Precisa señalar además que en proceso de fijar los correspondientes por cientos de responsabilidad a las partes concernidas por los daños sufridos, los tribunales deben tener presente las guías comparables con los hechos específicos que tienen ante sí. Esto es, una vez determinada cuál es la correcta sucesión de eventos, los jueces de primera instancia deben hacer referencia a la doctrina jurisprudencial con ánimo de compararlos con casos similares que hayan pautado la distribución equitativa de responsabilidad. De existir esos precedentes deben utilizarse como base; y deben honrarse siempre y cuando no se demuestre claro error en su contenido normativo o que en el caso en consideración intervienen circunstancias que lo distinguen de la jurisprudencia normativa. Sólo así puede alcanzarse la meta de la jurisprudencia de ofrecer un tratamiento similar a los litigantes que se hallan en circunstancias similares. Véanse R.B. Capalli, *Tort Damages in Puerto Rico*, 46 Rev. Jur. U.P.R. 241, 299 (1977); R.E. Bernier, *La Cuantía de los Daños, en Apuntes Legales*, Puerto Rico, 1968, págs. 107–110. Véanse también J. Puig Brutau, *La jurisprudencia como Fuente del Derecho*, Barcelona, Bosch, 10951; R. David, *Los Grandes Sistemas Jurídicos Contemporáneos*, Madrid, Aguilar, 1969, págs. 100 *et seq.*

"Al menos dos opiniones de este Tribunal son ilustradoras en la resolución del presente caso. Estas son : *Vda. de Dávila v. Fuentes Fluviales*, 90 D.P.R. 321 (1964), y *Rosario Crespo v. A.F.F.*, 94 D.P.R. 834 (1967).

"En Vda. de Dávila, ante, el operador de una máquina industrial murió por electrocución cuando una torre del

aparato vino en contacto con alambres eléctricos de alto voltaje. 90 D.P.R. a la pág. 323. Notamos allí que a la compañía suministradora de energía se le había requerido con alguna antelación que removiera las líneas eléctricas por cuanto se realizaba la construcción de un caserío —90 D.P.R. a las págs. 324–325 —y sostuvimos que la compañía proveedora actuó negligentemente al no tomar precauciones para reducir la peligrosidad en un área de construcción donde es usual la utilización de equipo de considerable elevación. 90 D.P.R. a la pág. 326. No obstante, resolvimos que la imprudencia del perjudicado al operar la maquinaria conociendo la presencia del tendido y el consiguiente peligro que el mismo representaba, lo responsabilizaba en un ochenta por ciento de los daños sufridos. 90 D.P.R. a las págs. 328–329.

"Y, en Rosario Crespo, ante, impusimos alguna responsabilidad a la compañía suplidora de energía por no tomar precauciones y aumentar la elevación de sus cables eléctricos que discurrían por un área de construcción. 94 D.P.R. a la pág. 849. No obstante haber hallado responsabilidad, al igual que en Vda. de Dávila, redujimos a un veinte por ciento al advertir que los lesionados no tomaron precaución alguna para evitar que ciertos instrumentos de medición de considerable altura que utilizaban, vinieran en contacto con las líneas eléctricas que se hallaban a la vista y cuya presencia advertían. 94 D.P.R. a las págs. 848–849.

"Salta a la vista que la doctrina de *Vda. de Dávila, ante,* es de estricta aplicación a los hechos del caso ante nos, debiendo, por tanto, privar sobre esta controversia los criterios allí expuestos. En éste, como en los dos casos citados precedentemente, la imprudencia de los lesionados, y su conducta irreflexiva, la responsabilizan preponderantemente, y comoquiera que los hechos probados no ameritan distinguir este caso de los mencionados resolvemos que la negligencia concurrente de la companía suplidora de electricidad debe reducirse del treinta al veinte por ciento".

Esta expresión normativa de nuestro Tribunal Supremo significa que en casos en que aplique la doctrina de negligencia comparada los tribunales de instancia deberán referirse a la doctrina jurisprudencial en busca de precedentes que comprendan hechos similares a los del caso de autos, y ajustarse

en la mayor medida posible a las pautas jurisprudenciales en cuanto a la distribución de la responsabilidad entre la parte demandada y la demandante.(4) Brau Del Toro, *op. cit.*, Vol. I, págs. 412–413.

■ Los demás errores señalados por los recurrentes no fueron cometidos. Sin embargo, aunque no está planteado en el recurso, debemos señalar que el orden que siguió el tribunal de instancia al hacer las deducciones de la Autoridad de Compensaciones por Accidentes de Automóviles (A.C.A.A.) fue incorrecto. En *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757, 775 (1978), resolvimos que:

forzoso es concluir que el cómputo a seguirse en caso de negligencia comparada es el de aplicar y calcular matemáticamente el por ciento de negligencia de la suma adjudicada en concepto de daños físicos y mentales, sin deducir en este instante la exención de la ley que nos ocupa. Una vez obtenido ese resultado, procede entonces restar la deducción de $1,000.00. (Citas omitidas.)

Por lo que la exención de $1,000 provista por la ley de la A.C.A.A. debe ser computada de la manera siguiente:

---

(4) Criterio que en principio coincide con los del tratadista argentino J. Goldenberg:

"Podemos concluir que más allá de los esquemas teóricos, los magistrados ponderan todas las circunstancias que rodean al hecho, tanto en materia de culpabilidad como de causalidad —que generalmente se presentan superpuestas en la prognosis del suceso— a fin de lograr una justa composición del resarcimiento. Al respecto, Machado ha dicho que los jueces tienen que pesar con prudente arbitrio la imprudencia de autor y damnificado, debiendo pronunciarse, en caso de duda, en favor de este último; porque entre el que daña a otro por negligencia de ambos, debe ser de mejor condición el ofendido, según la regla de derecho." J. Goldenberg, *La Relación de Causalidad en la Responsabilidad Civil*, 3ra ed. rev., Buenos Aires, Ed. Astrea, 1984, pág. 172.

Compensación concedida ....................................................... A
Menos cantidad de negligencia comparada ...................... -B

Total de la sentencia ............................................................. C
Menos exención de la A.C.A.A ........................................... -D

Cuantía de la sentencia a ser pagada ................................. E

Por las razones antes expuestas, *la sentencia recurrida será modificada para rebajar la compensación que le corresponde a la menor demandante y deducir la cantidad de mil dólares ($1,000) en la forma antes expuesta y, así modificada, se confirma.*

El Juez Asociado Señor Rebollo López emitió opinión concurrente y disidente, a la cual se unen el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón.

—O—

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López a la cual se unen el Juez Asociado Señor Negrón García y la Juez Asociada Señora Naveira de Rodón.

En el día de hoy una mayoría de los integrantes de este Tribunal —en aras de una alegada "seguridad jurídica y estabilidad del derecho"— comete el lamentable error de aplicar automática y equivocadamente una sabia norma jurisprudencial. Dicha mayoría parte de la errónea premisa de que propulsamos la revocación de la decisión emitida en *Torres Pérez v. Medina Torres*, 113 D.P.R. 72 (1982). Nada más lejos de la realidad. Reconocemos la sabiduría y validez —a la luz de los hechos particulares allí presentes— de la norma promulgada en dicho caso. Lo que sostenemos es que la referida norma no puede ser aplicada, en forma mecánica, a la

situación de hechos que hoy se encuentra ante nuestra consideración. Es por ello que disentimos.

I

El día 17 de enero de 1981, aproximadamente a eso de las 10:00 P.M. y en las inmediaciones de un parque deportivo existente en la Urbanización Villa Nevárez de Río Piedras, Puerto Rico, fue arrollada la joven de diez y siete años de edad Elizabeth Molina Caro —mientras cruzaba la Calle Número 10 de la referida Urbanización— por un vehículo de motor marca Volkswagen conducido por el demandado recurrente Manuel Dávila Parrilla, quien discurría en dirección de norte a sur por la mencionada vía pública.

Con motivo de dicho accidente, los padres de la referida adolescente, por sí y en representación de ella, radicaron una demanda de daños y perjuicios ante el Tribunal Superior de Puerto Rico, Sala de San Juan. Dicho foro, luego de la correspondiente vista evidenciaria, dictó sentencia declarando con lugar la demanda radicada. Lo ocurrido esa noche del 17 de enero de 1981 —conforme la Determinación de Hecho Núm. 8 de la sentencia dictada por el tribunal de instancia— fue lo siguiente:

8. Del testimonio prestado por la co-demandante Elizabeth Molina Caro se desprende que esa noche del accidente había salido de casa de una amiga llamada Debbie y tomó la Calle # 10 cerca del parque para regresar a su casa pues admitió que aunque era la ruta más larga *era también la más iluminada por las luces del parque* de "softball" y había siempre gente en las cercanías. Declaró que fue a cruzar de izquierda a derecha en la Calle # 10 *y que pudo observar que de frente venía un carro porque tenía las luces encendidas.* Aun as[í] siguió cruzando *pues según su apreciación, el carro venía a una distancia prudente.* Admitió que pudo haberse detenido en la otra mitad de la calle, *pero que no lo hizo porque el carro no venía cerca.* (Énfasis suplido.) *Exhibit* 4, pág. 8.

Como consecuencia del impacto sufrido —el cual el tribunal de instancia cataloga, en su Determinación de Hecho Núm. 4, de gran magnitud— la joven Molina Caro perdió el conocimiento, sufrió fracturas múltiples en la pierna (tibia) izquierda, fractura del hueso maxilar anterior, fractura de la mandíbula y laceración del pliegue mucobucal, pérdida de varios dientes, lo que requirió extenso trabajo de restauración, y varias cicatrices permanentes al dorso de ambas manos. Procede que se señale, en adición, que las fracturas de la pierna izquierda y de la mandíbula requirieron que la joven fuera intervenida quirúrgicamente; que ésta estuvo hospitalizada por espacio de once días, luego de lo cual fue dada de alta para seguir tratamiento en su hogar, y que la referida adolescente no pudo asistir a la escuela superior por un semestre como consecuencia del accidente sufrido.

En la sentencia que dictara, el foro de instancia condenó a la parte demandada recurrente al pago de la suma de $40,000 a la menor codemandante, determinando que ésta había incurrido en un 25% de negligencia comparada;(1) condenó, en adición, a la parte demandada *al pago de la suma íntegra* de $10,000 a la señora madre de dicha menor por concepto de los sufrimientos y angustias mentales sufridos por ella como consecuencia del accidente ocurrido a su hija.(2) Finalmente, se condenó a la parte demandada al pago de las costas y la suma de $3,000 por concepto de honorarios de abogado.

Inconforme, la parte demandada acudió ante este Tribunal mediante la radicación del correspondiente recurso de

---

(1) El tribunal de instancia ordenó la deducción de $1,000 dispuesta "en el Art. 8 de la Ley de Protección Social por Accidentes de Automóviles (*ACCA*). Del remanente, se le deducirá el veinticinco porciento [*sic*] (25%) según nuestra determinación de negligencia comparada". *Exhibit* 4, pág. 21.

(2) El foro de instancia desestimó la reclamación del padre de la menor codemandante por razón de éste no haber comparecido al tribunal ni presentarse prueba alguna relacionada con sus alegados daños.

revisión.(3) Mediante resolución a esos efectos, de fecha 26 de noviembre de 1986, le concedimos término a la parte demandante recurrida:

> . . . para mostrar causa por la cual no se deba expedir el auto, modificar la sentencia recurrida para aumentar el por ciento de responsabilidad por negligencia atribu[i]do por el tribunal a la recurrida, Elizabeth Molina Caro, y así modificada confirmar la sentencia.

La parte recurrida ha comparecido. Una mayoría del Tribunal en el día de hoy emite una sentencia mediante la cual, no obstante confirmar la sentencia emitida por el tribunal de instancia, modifica el por ciento de negligencia comparada que el referido foro determinó, aumentándolo de un veinticinco a un sesenta por ciento; *determinando, en adición, que la suma de $10,000 que dicho foro le concediera a la madre de la menor, por concepto de los sufrimientos y angustias mentales que experimentara, "no tiene que ser reducida" en ese sesenta por ciento.* (Énfasis suplido.) Opinión del Tribunal, pág. 374. Diferimos; veamos por qué.

## II

De entrada, procede dejar establecido que —no obstante entender, al igual que el foro de instancia y la mayoría del

---

(3) La parte demandada recurrente le imputó al foro de instancia la supuesta comisión de tres errores, a saber:

"A) *Primer Señalamiento de Error*:

"Erró el Tribunal de Instancia en imputarle negligencia a la parte demandada recurrente o en la alternativa, erró en su determinación de imputarle solamente un veinte y cinco porciento [*sic*] (25%) de negligencia comparada a la co-demandante Elizabeth Molina Caro.

"B) *Segundo Señalamiento de Error*:

"Erró el Tribunal de Instancia en la cuantía de la compensación concedida a las co-demandantes Elizabeth Molina Caro y Genoveva Caro.

"C) *Tercer Señalamiento de Error*:

"Erró el Tribunal de Instancia en la imposición de honorarios de abogado a ser pagados por la demandada." Solicitud de revisión, pág. 4.

Tribunal, que la menor codemandante efectivamente incurrió en negligencia comparada— somos del criterio que procede la confirmación de la sentencia recurrida en tanto y en cuanto le impone responsabilidad al demandado recurrente Manuel Dávila Parrilla. Éste, en el recurso que radicara, sostiene que lo determinado como probado por el tribunal de instancia en la antes transcrita Determinación de Hecho Núm. 8, la cual acepta como correcta, le exonera totalmente de responsabilidad.(4) No estamos de acuerdo.

De la antes mencionada determinación de hecho se puede hacer la inferencia razonable y permisible de que el recurrente conducía su vehículo a exceso de velocidad, o, cuando menos, a una "velocidad mayor de la que le permit[ía] ejercer el debido dominio del vehículo *y reducir la velocidad o parar cuando [fuere] necesario* para evitar un accidente". (Énfasis suplido.) Sec. 5-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 841(a).

Ello es así por cuanto surge de la determinación antes mencionada que la joven Molina Caro decidió cruzar la carretera, a pesar de haber visto el vehículo del demandado, por razón de que "el carro venía a una distancia prudente", esto es, el mismo "no venía cerca". *Exhibit* 4, pág. 8. Es un hecho incontrovertido que el carro impactó a dicha joven antes de que ésta pudiera alcanzar la acera contraria.(5) Resulta ser, en su consecuencia, una inferencia razonable y per-

---

(4) De hecho, el recurrente sostiene en el recurso que radicara que en el presente caso no solicitó una exposición narrativa de la prueba o una transcripción de la misma debido a que las propias determinaciones de hecho realizadas por el tribunal de instancia —específicamente la Núm. 8— lo exonera totalmente.

(5) Resulta procedente enfatizar que según una deposición que se le tomara a la joven Molina Caro —la cual fuera presentada por la parte demandada recurrente y admitida en evidencia por el foro de instancia— ella fue alcanzada por el vehículo del demandado cuando "estaba a dos o tres pasos de la acera" contraria. *Exhibit* 8, pág. 55. Ello significa que dicha joven fue impactada por el carro del demandado en la parte izquierda —en la dirección que discurría éste— de la Calle Núm. 10 de la Urb. Villa Nevárez.

misible que el carro la alcanzó y la impactó —no obstante haber sido observado a una "distancia prudente"— antes de que ella pudiera alcanzar la acera contraria por razón de que el carro discurría a una alta velocidad.

Por otro lado, tampoco existe controversia sobre el hecho de que el sitio del accidente era uno iluminado y que el demandado contaba con buena visibilidad. En primer lugar, la calle era una recta; en segundo lugar, las luces de su vehículo estaban encendidas, y por último, las luces del parque deportivo adyacente iluminaban el lugar. Cabe preguntarse, ¿cómo es posible que el demandado no viera a la joven Molina Caro y no pudiera frenar a tiempo cuando en el momento que dicha joven comienza a cruzar la calle, el carro se encontraba a una "distancia prudente" de ella? La contestación es obvia: el demandado discurría a una velocidad mayor de la que le permitía ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando fuere necesario, o estaba conduciendo su vehículo sin prestar la debida atención a la vía pública por la que discurría.

A esos efectos, resulta irrelevante que el demandado no condujera su vehículo a una velocidad mayor que la establecida por ley para la zona urbana. Hemos resuelto que el hecho de que por ley se señale un máximo de velocidad para determinada zona en una ciudad *no* significa que se esté autorizado a conducir a ese máximo de velocidad todo el tiempo. *Vda. de Vila v. Guerra Mondragón*, 107 D.P.R. 418 (1978). En resumen, no tenemos duda alguna de que la determinación del tribunal de instancia de que el demandado recurrente fue negligente en relación con el accidente ocurrido es correcta.

Ello no obstante, tampoco abrigamos duda de que la joven Molina Caro igualmente incurrió en negligencia respecto al desafortunado accidente en que se vio envuelta. Como es sabido, a un adolescente de diez y siete años se le puede imputar negligencia comparada. *Colón Alvarado v.*

*Corp. Mpal. de Barranquitas*, 93 D.P.R. 63 (1966). Ella no tenía necesidad alguna de cruzar la vía pública en esos momentos; podía esperar tranquilamente a que pasara el carro. Una persona que cruza una vía pública, sin necesidad urgente para ello, a pesar de notar la presencia de un vehículo de motor que se aproxima —no obstante el mismo estar a una "distancia prudente"— incurre, a nuestra manera de ver las cosas, en negligencia, *sobre todo en horas de la noche cuando resulta sumamente difícil calcular la velocidad a que discurren los vehículos de motor.* Consideramos razonable imponerle una negligencia comparada de un cincuenta (50) por ciento a la referida menor Molina Caro.

### III

¿Procede reducir, igualmente, en un cincuenta (50) por ciento la suma de dinero que le concediera el tribunal de instancia a la madre de la joven Molina Caro por concepto de los sufrimientos y angustias mentales que ésta experimentara como consecuencia del accidente sufrido por su hija?

Una mayoría de los integrantes de este Tribunal entiende que ello no es procedente. Al así decidir se apoyan en lo resuelto en *Torres Pérez v. Medina Torres*, ante, pág. 79. En dicho caso resolvimos "que no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero".[6] Somos del criterio que la transcrita norma no es aplicable a la situación de hechos que da lugar al presente recurso.

---

[6] Al así resolver, expresamente se revocó lo resuelto en *Quintana Martínez v. Valentín*, 99 D.P.R. 255 (1970).

## IV

La correcta solución de la cuestión en controversia requiere, aun cuando en forma breve, el examen del trasfondo jurídico de la misma; esto es, la exposición y discusión de las doctrinas de negligencia comparada y la de responsabilidad solidaria entre cocausantes de un daño.

Como es sabido a raíz de la Ley Núm. 28 de 9 de junio de 1956, que enmendó el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, rige en Puerto Rico la doctrina de la negligencia comparada. El propósito de tal enmienda fue el de eliminar la doctrina de negligencia contribuyente como defensa absoluta en una reclamación de daños y perjuicios. *Acosta Vargas v. Tió*, 87 D.P.R. 262 (1963). A tales efectos se le añadió al referido artículo que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".

La finalidad de la doctrina de la negligencia comparada "es determinar *hasta qué punto* el daño ha sido predominantemente causado por una u otra parte". J. Santos Briz, *La Responsabilidad Civil*, 3ra ed. rev., Madrid, Ed. Montecorvo, S.A., 1981, pág. 101. Esto implica que tanto la conducta del perjudicado como la del agente serán tomadas en cuenta para determinar *en qué medida* han contribuido ambos a la realización del daño. Como expresáramos en *Montero Saldaña v. Amer. Motors Corp.*, 107 D.P.R. 452, 463 (1978), "la graduación de culpa en casos de negligencia es la forma más justa y razonable de imponer responsabilidad".(⁷)

---

(⁷) En el citado caso de *Montero Saldaña v. Amer. Motors Corp.*, 107 D.P.R. 452, 463–464 (1978), este Tribunal, por consideraciones de equidad y justicia, extendió la doctrina de negligencia comparada a los casos de responsabilidad absoluta por defectos en los productos. Al así hacerlo expresamos que:

"Es aceptado que la graduación de culpa en casos de negligencia es la forma más justa y razonable de imponer responsabilidad. Si es así en casos de negligencia ¿qué razón hay, que no sea de estricto tecnicismo para no aplicarla en casos de responsabilidad absoluta por defectos en los productos? . . . No aplicar la gradua-

El perjudicado no pierde su derecho a ser resarcido por el hecho de haber contribuido al daño sufrido; pero su indemnización se reduce en aquella proporción en la que contribuyó a la realización del mismo. "El fundamento de la imputación al perjudicado se halla en su propia conducta descuidada o negligente." Santos Briz, *op. cit.*, pág. 103. Por otro lado y como consecuencia de lo anterior, la obligación de indemnizar del agente se reduce hasta donde alcance la culpa del perjudicado.

Motivados también por consideraciones de equidad y justicia este Tribunal ha adoptado la norma, hoy casi universal, de responsabilidad solidaria entre los cocausantes de un daño. *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701 (1987);(⁸) *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60

---

ción de culpa en los casos en que se impone responsabilidad al fabricante, porque su responsabilidad no está predicada en una actuación negligente, es un ejercicio en futilidad. Lo más justo es que la responsabilidad corra pareja con el grado de la falta, no importa el concepto por el que se imponga. Tan injusto resulta negarle compensación a un demandante porque en alguna medida contribuyó a la ocurrencia del accidente como imponerle toda la responsabilidad al fabricante de un artículo defectuoso no obstante haber sido imprudente el demandante al utilizarlo. Para hacer justicia debemos liberarnos de la esclavitud de los términos doctrinarios."

(⁸) Sobre este particular en *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 706 (1987), señalamos que:

"La solución no puede ser más justa. Desde comienzos del siglo XIX autores como Giorgi, Maroi y Venezian ya aludían al hecho dañoso que tiene por causa una deliberación tomada de común acuerdo o intervención material de varios autores. De Cupis, por su parte, insistía en la unidad del acto, producto de un haz de actividades concurrentes subjetivamente distintas y con diversos sujetos. [M.] Albaladejo, [*Sobre la solidaridad o mancomunidad de los obligados a responder por acto ilícito común*, 16 An. Der. Civ. 345, 367 n. 25 (1963)].

"Ya en el siglo XX, no cabe duda de la universalización del principio de la solidaridad en materia de responsabilidad civil extracontractual. En Francia, autores como Mazeaud y Tunc, Aubry y Rau, Carbonnier, Planiol y Ripert, Vincent, De Acutis, Rubino y Albertario sintonizan con la corriente de pensamiento que propulsa la responsabilidad colectiva de cuantos intervinieron en la inflicción del daño. Igual derrotero siguió la jurisprudencia de las cortes francesas. [F.] Soto Nieto, [*La responsabilidad civil derivada del ilícito culposo*, Madrid, Ed. Montecorvo, 1982,] págs. 81–83. En España la doctrina mayoritaria se mostró abierta-

(1985); *Soc. de Gananciales v. Soc. de Gananciales*, 109 D.P.R. 279, 288 (1979); *Merle v. West Bend Co.*, 97 D.P.R. 403, 405 (1969); *Serralta v. Martínez Rivera*, 97 D.P.R. 466, 470 (1966); *Torres v. A.M.A.*, 91 D.P.R. 714, 717 (1965); *Marcano Torres v. Fuentes Fluviales*, 91 D.P.R. 654, 659 (1965); *García v. Gobierno de la Capital*, 72 D.P.R. 138 (1951). Como expone Soto Nieto:

> No son descartables consideraciones de equidad a favor de la solución postulada de solidaridad entre los copartícipes de un hecho ilícito culposo. Hay que destacar —como ha puesto de relieve GULL[Ó]N BALLESTEROS— la evolución experimentada por la responsabilidad extracontractual que viene a ser un derecho tuitivo de la víctima. La mancomunidad supondría un retroceso en este panorama porque el perjudicado podría no ver satisfecho por entero su interés en el resarcimiento si uno de los obligados resultase insolvente. F. Soto Nieto, *La responsabilidad civil derivada del ilícito culposo*, Madrid, Ed. Montecorvo, 1982, pág. 84.

Por otro lado, la doctrina de responsabilidad solidaria entre cocausantes debe ser analizada en conjunción con la doctrina de la negligencia comparada. En *Ramos v. Caparra Dairy, Inc.*, ante, págs. 62–64, explicamos detalladamente cuáles eran los resultados de la interacción de ambas doctrinas. Allí expusimos que:

> Aunque frente al tercero perjudicado los cocausantes son solidariamente responsables, la determinación judicial de negligencia atribuible a uno de los cocausantes tiene como objetivo principal que ése únicamente responda por el monto de su responsabilidad en el daño causado. Según el Art. 1802 del Código Civil, 3[1] L.P.R.A. sec. 5141, no debe imponérsele obligación por los daños en exceso del grado de su culpa

---

mente en favor del reconocimiento de la solidaridad. Sólo Traviesas, Díaz Pairó y Albaladejo se apartan de la posición mayoritaria. V. Guilarte Zapatero, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Revista de Derecho Privado, 1983, T. XV, Vol. 2, pág. 224; Albaladejo, *op. cit.*, pág. 358." (Énfasis suprimido.)

cuando la misma ha sido compartida con otra persona y así se ha adjudicado.

Este principio de responsabilidad según el grado de negligencia de un cocausante, a menudo se confunde con el de responsabilidad como deudor solidario. Son principios diferentes y debemos distinguirlos. La solidaridad se define como "[l]a pluralidad subjetiva . . . en vez de producir la división de la relación obligatoria en créditos o deudas separados, permite por el contrario a uno solo de los acreedores exigir el total importe del crédito, y obliga a cada uno de los deudores a pagar la totalidad de la deuda". D. Espín Cánovas, *Manual de Derecho Civil Español*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1961, Vol. III, págs. 121–122. Esta relación obligacional es la que liga a los cocausantes de un daño ante el perjudicado.

Aunque la responsabilidad pecuniaria es solidaria, una reclamación de pago dirigida hacia un cocausante no aumenta ni disminuye su responsabilidad objetiva en una actuación culposa.

Una vez el deudor solidario realiza el pago en proporción mayor a la responsabilidad que le correspondía, surge a su haber un crédito que no es otra cosa que el derecho a reclamar la cuantía satisfecha en exceso de esa responsabilidad. *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Torres* v. *A.M.A.*, 91 D.P.R. 714 (1965); *Serralta* v. *Martínez Rivera*, 97 D.P.R. 466 (1969).

El nacimiento de esta causa de acción, derivada de una relación interna, ha sido denominada "de contribución, . . . de nivelación, de reembolso y de regreso" —*Soc. de Gananciales* v. *Soc. de Gananciales*, 109 D.P.R. 279, 282 (1979). Tiene como fundamento último el evitar el enriquecimiento injusto.

Es evidente que la norma de responsabilidad solidaria entre los cocausantes de un daño resulta ser, por regla general, la solución más justa para el perjudicado. Ésta le provee una mayor garantía para poder resarcirse por el daño sufrido. No obstante, aquel cocausante contra quien se hace efectiva la totalidad del crédito no queda desamparado. Una vez éste realiza el pago en una proporción mayor a la de su

responsabilidad surge a su favor un crédito el cual puede hacer efectivo con la correspondiente acción de nivelación.

Sin embargo, si es que interesamos arribar a un resultado que sea siempre justo, debemos mantener presente que la aplicación de estas dos doctrinas no puede hacerse en forma automática. Esto es, hay que reconocer que la interacción de las referidas doctrinas y la aplicación mecánica de las mismas nos pueden llevar a resultados erróneos. Para evitarlo, tenemos que forzosamente admitir *que existen diversas situaciones de hechos que hacen necesario establecer diferencias en la aplicación de dichas doctrinas.*

## V

Expresa el comentarista Jaime Santos Briz en su obra *La Responsabilidad Civil*, en lo pertinente, que:

> En una primera acepción, operante en la esfera extracontractual principalmente, *el daño personal puede ser directo o indirecto.* Es directo cuando el acto lesivo recae sobre la persona o bienes del damnificado, que es a la vez víctima del hecho, y es indirecto cuando el acto ataca los bienes o la persona de la víctima y se refleja en el patrimonio de otro que resulta damnificado . . . . El daño personal, ya sea directo o indirecto, debe resarcirse por el responsable de un acto ilícito . . . . El daño indirecto puede reclamarlo quien, siendo persona distinta de la víctima, ha sufrido perjuicio en un interés propio y legítimo. (Énfasis suplido.) J. Santos Briz, *op. cit.*, pág. 190.

A los fines de ilustración y mejor entendimiento de lo antes expresado, procede que se señale que en esa "esfera extracontractual" existen, cuando · menos, dos grandes "tipos" o grupos de situaciones de hechos[9] en donde puede resultar afectado el "perjudicado directo o primario" y, en casos apropiados, el "perjudicado indirecto", a saber: (1) *la*

---

[9] Dentro de cada uno de esos dos grandes grupos, naturalmente, existen variantes.

*situación en que al "perjudicado directo"* —ya sea por razón de que efectivamente no incurrió en negligencia alguna en relación con la situación en que él sufrió sus daños o el caso del "tercero" inocente (la situación del pasajero del autobús que se ve envuelto en un accidente con otro vehículo de motor), ya por mandato o ficción de ley (el caso del niño de tierna edad o del incapaz)— *no se le puede imputar negligencia* y (2) *la situación en que el "perjudicado directo" contribuye con su negligencia a la ocurrencia de la situación en la cual él sufre sus daños.*

Es correcto, como expresáramos anteriormente, que en *Torres Pérez v. Medina Torres*, ante, resolvimos que "no puede reducirse la indemnización concedida a un demandante a base de la negligencia contribuyente en que incurrió otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero".

Debe mantenerse presente, sin embargo, que las normas jurídicas no aplican sobre el vacío. Al enfrentarse a un caso en particular, los tribunales tienen el deber de examinar detenidamente la situación de hechos que tienen ante sí con el propósito de determinar si una norma establecida anteriormente es aplicable a los hechos del caso bajo su consideración. De esta manera se evita el peligro de actuar a base de puras consideraciones teóricas sin tomar en cuenta lo determinante para el Derecho: los hechos.

Lo resuelto en el caso de *Torres Pérez v. Medina Torres*, ante, es enteramente correcto *dados los hechos particulares de dicho caso*. Como podremos ver más adelante en detalle, la norma allí implantada se aplicó a la situación de dos codemandantes, *perjudicados indirectos ambos*, que reclaman el resarcimiento de los daños sufridos por ellos como consecuencia de un accidente en que se vio envuelta su hijita (perjudicada directa), la cual, debido a su tierna edad, *resultaba ser inimputable* y en relación con el cual accidente se determinó que la madre había sido negligente.

Lo allí resuelto no es aplicable a una situación —como la que presenta el caso de autos— donde el perjudicado directo o primario ha incurrido en negligencia en relación con la situación de hechos que da lugar a sus daños. En esta clase de situaciones el derecho o causa de acción que tiene el "perjudicado indirecto" a que se le compense los daños sufridos por él como consecuencia del daño recibido por el "perjudicado directo" *dependerá* del "derecho o causa de acción" que este último tenga a recobrar por el daño recibido y, en adición, de si ese "perjudicado indirecto" —independientemente de la "conducta" observada por el "perjudicado directo"— incurrió o no en negligencia.

En relación con las dos variantes que presenta la primera situación de hechos —(1) la del perjudicado o "tercero" inocente y (2) la del inimputable— por razón de que a ese "perjudicado directo" no se le puede imputar negligencia alguna, el "perjudicado indirecto" tendrá derecho a recibir la totalidad de la suma de dinero en que se valoren sus daños *a menos que* él personalmente haya incurrido en negligencia. Ello es así por razón de que en estas dos situaciones el "perjudicado directo" —que, naturalmente, tiene derecho a la totalidad de sus daños— no fue un cocausante del daño causado. Al ser ello así, no se afecta en lo absoluto la causa de acción del "perjudicado indirecto" *a menos que* él *personalmente* hubiera incurrido en negligencia en relación con la situación que "da lugar" a la causa de acción de ambos.

Por el contrario, en la segunda situación de hechos antes señalada —aquella en que el "perjudicado directo" contribuye con su negligencia a la ocurrencia del daño por él sufrido— la causa de acción o derecho del "perjudicado indirecto" a recobrar por sus daños se verá proporcionalmente afectada por el por ciento de negligencia en que incurrió el "perjudicado directo"; esto es, la suma de dinero en que sean valorados sus daños será reducida en el por ciento de negligencia en que incurrió el "perjudicado directo". Di-

cho de otra forma, en esta clase de situaciones el derecho a resarcimiento que tiene el "perjudicado indirecto" *depende* del derecho que tenga el "perjudicado directo" *por cuanto este último es un cocausante del daño.* La prueba de la corrección de lo anteriormente expresado está en que si el "perjudicado directo" resulta ser el cien por ciento responsable de la situación que dio lugar a la ocurrencia de sus daños, el "perjudicado indirecto" no tendrá causa de acción alguna contra la otra persona envuelta en la situación.

## VI

Un breve análisis de algunas de las decisiones pertinentes al punto en controversia, obrantes en nuestra jurisprudencia, nos permitirá demostrar la corrección de lo antes expuesto y precisar nuestra posición. Veamos.

El caso de *Flores v. F. & J.M. Carrera, Inc.*, 83 D.P.R. 332 (1961), es un ejemplo de la primera variante antes señalada, esto es, el caso del "tercero inocente". En dicha situación analizamos la causa de acción de una persona que viajaba como pasajero en un automóvil que tuvo un accidente con otro vehículo de motor en una intersección. Habiendo demandado el pasajero ("perjudicado directo") a ambos conductores, se determinó que estos dos habían sido igualmente responsables por el accidente ocurrido. Este Tribunal, expresando que no había prueba de que el pasajero codemandante[10] fuera "personalmente responsable" por el accidente y ratificando la norma establecida a los efectos de que la negligencia del conductor de un vehículo de motor no es imputable a sus pasajeros,[11] resolvió que dicho pasajero codemandante tenía derecho a ser resarcido por la aseguradora

---

[10] El chofer del automóvil en que éste viajaba también demandó al conductor del segundo vehículo.

[11] Véanse: *Pacheco v. Pomales*, 55 D.P.R. 341 (1939); *López v. American Railroad Co. of P.R.*, 50 D.P.R. 1 (1936).

del otro vehículo *en la totalidad de los daños por él sufridos*, dada la solidaridad de la obligación entre cocausantes del daño (los dos conductores), *independientemente* de que la indemnización correspondiente al conductor del vehículo en que él viajaba fuera reducida en proporción en su negligencia contribuyente.(12)

El caso en que, respecto al punto en controversia, basa la mayoría del Tribunal su posición, *Torres Pérez v. Medina Torres*, ante, es un ejemplo de la segunda variante a que anteriormente hemos hecho referencia, la del perjudicado directo inimputable. Es enteramente correcto, repetimos, que en dicho caso este Tribunal expresó que "no puede reducirse la indemnización concedida a un demandante a base de negligencia contribuyente en que incurriera otro codemandante como causa de un accidente, a menos que la negligencia de este último pudiera imputarse al primero". *Dicha aseveración, como expresáramos anteriormente, tiene que ser interpretada a la luz de los hechos particulares de dicho caso;* esto es, no puede ser aplicada automática y mecánicamente a cualquier situación de hechos. Veamos porqué.

En el citado caso de *Torres Pérez v. Medina Torres*, ante, una niña de cuatro años de edad se hallaba con su madre en casa de un familiar. Pasaba por la calle frente a la casa un vehículo de motor en que se vendían mantecados. Este se detuvo y la madre permitió que la niña cruzara la calle para comprar un mantecado. Nadie la acompañó. La madre permaneció en el balcón de la casa. La niña compró el mante-

---

(12) En el citado caso de *Flores v. F. & J.M. Carrera, Inc.*, 83 D.P.R. 332 (1961), no existió un "perjudicado indirecto" que codemandara; esto es, un pariente o familiar de Flores que demandara por los daños sufridos por él como consecuencia del daño experimentado por Flores. De haberlo habido, sin embargo, no hay duda de que, no habiendo incurrido Flores en negligencia alguna, ese "perjudicado indirecto" hubiera tenido derecho, igualmente, a recibir la totalidad de sus daños. Ello por razón de que Flores no fue un cocausante del daño por él recibido.

cado mientras el vehículo estaba en marcha, siendo impactada por éste. Radicada demanda de daños y perjuicios por los padres de la niña, por sí y en representación de ésta, contra el dueño y el conductor del vehículo expendedor de mantecados, estos últimos acudieron ante este Tribunal en solicitud de revisión de la sentencia que los responsabilizó totalmente por el accidente ocurrido.

Expresamos en dicho caso que a la niña de cuatro años de edad —la "perjudicada directa"— no podía imputársele responsabilidad por sus actos por cuanto a "esa edad un niño no tiene la 'prudencia, atención y discreción' para evitar colocarse en situaciones de peligro para su seguridad, y 'no se le requiere que cumpla con las normas de conducta que es responsable esperar de un adulto'". Ello no obstante, determinamos que la madre de la niña —"perjudicada indirecta"— "'faltó a su obligación de vigilarla debidamente y su actitud permisiva al dejarla cruzar la calle sola, no obstante su corta edad, para acercarse al vehículo de motor, *contribuyó de manera eficiente a la ocurrencia del accidente*'". (Énfasis suplido.) Opinión del Tribunal, pág. 376. Determinamos, sin embargo, que a la niñita codemandante no se le podía imputar la negligencia en la cual había incurrido su señora madre, como tampoco se le podía imputar dicha negligencia al padre codemandante —quien no se encontraba en el lugar del accidente— quien al igual que su esposa era un "perjudicado indirecto", y quien no incurrió en negligencia alguna.

En virtud de ello resolvimos que tanto la niña como su padre tenían derecho *a la totalidad* de la suma de dinero en que el tribunal de instancia había valorado sus daños; no así la madre codemandante, en relación con la cual procedía la reducción del por ciento de negligencia en que ésta había incurrido. *He ahí la razón de ser de la norma antes mencionada*; esto es, que no procede la reducción de la indemnización de un codemandante a base de la negligencia contribuyente en que incurre otro codemandante. Como podemos no-

tar, al ser inimputable la niña ("perjudicada directa") la causa de acción del padre codemandante ("perjudicado indirecto") no se afecta en nada. Éste, al igual que la niña, tiene derecho a recobrar la totalidad de sus daños. No así la madre codemandante. Su causa de acción quedó afectada —no obstante no haber la perjudicada directa (la niña) "incurrido" en negligencia— por razón de que dicha madre codemandante incurrió *personalmente* en negligencia, *negligencia que no le podía ser imputada al padre*.[13]

*En el caso que ocupa nuestra atención, la situación es diferente.* El mismo es representativo del "segundo grupo de casos"; esto es, aquél donde el "perjudicado directo" incurre en negligencia en relación con la situación en que sufre daños. En esta situación, la suma de dinero en que son valorados los daños del "perjudicado directo" tiene que ser reducida en proporción al por ciento de negligencia que se le atribuya a dicho "perjudicado directo". A igual resultado tiene que llegarse en relación con cualquier "perjudicado indirecto" que demanda por los daños que haya sufrido como consecuencia, a su vez, del daño sufrido por el "perjudicado directo". *La causa de acción de este "perjudicado indirecto" depende totalmente de la causa de acción del "perjudicado directo"*. Tan es así, *repetimos*, que si el tribunal determina que ese "perjudicado directo" fue el *cien por ciento* responsable de la ocurrencia de la situación en que él sufrió los

---

[13] El primer caso de *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982), constituye, al igual que el citado caso de *Torres Pérez v. Medina Torres*, 113 D.P.R. 72 (1982), otro ejemplo de este segundo grupo o tipo de situaciones de hecho. En dicho caso un niño de seis años de edad fue arrollado por un camión de la Caparra Dairy. Determinamos en dicho caso que al niño, por razón de su edad, no se le podía imputar negligencia contribuyente. No obstante ello, determinamos que la madre del niño sí había sido negligente en el cuido de éste. Redujimos en dicho por ciento la suma de dinero en que se valoraron sus daños. No así en cuanto al padre codemandante, quien no se encontraba en el sitio del accidente. Al así resolver, lo hicimos en forma consistente con la norma anteriormente expuesta.

daños, el "perjudicado indirecto" no puede recobrar nada, independientemente del hecho de que efectivamente sufriera daños con motivo de dicha situación.

Es por ello que en el presente caso, habiendo la joven Molina Caro (perjudicada directa) incurrido en negligencia, en relación con el accidente en que se vio envuelta, el derecho a resarcimiento de su señora madre (perjudicada indirecta) se ve afectado por el por ciento de negligencia en que su hija incurrió.

## VII

La posición que asume la mayoría del Tribunal equivale a sostener que, en esta clase de situación de hechos, la causa de acción del perjudicado indirecto es una totalmente independiente de la acción del perjudicado directo. Dicho razonamiento, como hemos visto, es uno completamente equivocado ya que la una depende completamente de la otra.

A tales efectos reproducimos parcialmente el análisis que sobre este aspecto ha elaborado el comentarista chileno José Bidart Hernández al analizar una decisión emitida en esa jurisdicción por un tribunal de apelaciones, referente la misma a la acción civil por sufrimientos y angustias mentales radicada por los herederos de una persona que encontró la muerte en un accidente, en relación con el cual éste último incurrió en culpa o negligencia.

> ... *En efecto, si bien las acciones son diferentes y se trata de una acción personal del causahabiente, esto no significa que esta acción sea totalmente independiente de la víctima directa.* La acción es personal en el sentido de que ella no figura en el patrimonio dejado por la víctima; que no es a título de sucesor que el causahabiente dispone del derecho de obtener la indemnización de un daño que repercute en su patrimonio. Pero, desde otro punto de vista, dicho derecho "permanece atado al difunto, en el sentido de que los valores de los que los suyos se ven privados son los que se ligaban a su existencia, y que habrían recibido de él, no de su propio fondo". *Así, los*

*daños son personales, pero existe una interdependencia con los que ha sufrido la víctima directa.*

*Es porque la víctima ha sufrido un perjuicio que el causahabiente sufre también otro perjuicio. Si aquélla no hubiera perecido, de nada habría podido quejarse este último.*

Esta interdependencia de las acciones resulta, además, del hecho de que es invocando ciertos vínculos que unen al actor con la víctima, que aquél puede pretender una acción reparatoria del perjuicio. Sin esos lazos o relaciones no se tiene derecho a acción alguna, pues los perjuicios resultan justamente de dichas relaciones. Es porque el causahabiente es hijo, padre, hermano, etc., que puede pretender haber sufrido un daño con la muerte de la víctima; de ahí que estos perjuicios encuentran su fuente en una verdadera solidaridad familiar.

No sería justo ni equitativo que para invocar el derecho a demandar una reparación; que para invocar la pretensión misma a la existencia de un daño, el causahabiente haga valer el lazo que lo une a la víctima, y que pretenda ser un tercero extraño cuando se le alega que el accidente, del cual derivan todos los perjuicios, se ha debido en parte al hecho culpable de quien falleció. El lazo es indisoluble, ya que es el que justifica la acción y el hecho originario de todos los perjuicios es el mismo. O se acepta la relación familiar con todas sus consecuencias, o se rechaza en su totalidad. La víctima, en vida, no habría podido desligarse de su propia culpa para pretender una reparación integral. Los causahabientes no pueden pretender, por tanto, que esa culpa no les pueda ser opuesta, ya que de la víctima les viene en el fondo el derecho.

Pero hay más: el causahabiente, al poner en movimiento la acción misma de la víctima y en su carácter de sucesor de ésta, sólo obtendría una reparación parcial. Si acciona a título personal, la reparación sería integral. En esta última situación, tendría más derechos que la propia víctima. Cierto es que su perjuicio es personal, distinto del de la víctima, pero ya está dicho que no es totalmente independiente de esta última.

Con la solución que se critica, bien podría suceder que el causahabiente, en reparación de su perjuicio personal, obtuviera una reparación superior a la que podría obtener la sucesión de la víctima en reparación de la muerte de ésta, y es bien notorio que, por grandes que sean los primeros daños, no pue-

den ser tan considerables como los que experimenta la víctima directa: ésta pierde la vida.

Tampoco puede, en consecuencia, fundarse la tesis de la inoponibilidad de la culpa de la víctima a los causahabientes, en una presunta independencia del daño sufrido por éstos. Creemos haber demostrado que no se da tal independencia.

El fallo que comentamos, sin analizar la cuestión ni reparar en ninguna de las posturas que han preocupado a la doctrina y la jurisprudencia sobre el punto, da, sin embargo, una solución correcta, allegada a los buenos principios y a la moral: *la culpa de la víctima puede ser alegada por el demandado como una causal de exoneración parcial de responsabilidad, incluso en aquellos casos en que un causahabiente acciona por los daños sufridos en su patrimonio con la muerte de la víctima.* La cuestión se plantea en relación a la muerte de la víctima, por ser el caso más frecuente; pero bien podría resultar también de cualquier otro perjuicio personal a la misma y del cual resultaran daños por repercusión para los causahabientes, como sería el caso en que la víctima sólo sufriera una enfermedad con el accidente. (Énfasis suplido.) J. Bidart Hernández, *Sujetos de la acción de responsabilidad extracontractual*, Chile, Ed. Jurídica de Chile, 1985, págs. 104–106.

Véase, en adición, el comentario del profesor R. Domínguez Águila, *Hecho de la víctima como causal de exoneración de responsabilidad civil*, 34 Rev. Der. C. Soc. Chile 30 y ss. (1966).[14]

En resumen, resulta totalmente ilógico permitir a los parientes cercanos invocar de una parte la solidaridad familiar para ser compensados por el autor del accidente, y por otro lado, rehusarse a aceptar para ellos mismos las consecuencias de la falta de la víctima o perjudicado directo. La independencia de las acciones no significa la división del accidente. Es en el accidente que el perjuicio del perjudicado

---

[14] Véanse, además, las dos sentencias de la Corte de Casación de Francia de 25 de noviembre de 1964, D. Dalloz, A. Dalloz y Ch. Vergé, *Recueil Dalloz de Doctrine de Jurisprudence et de Législation*, París, Jurisprudence Générale Dalloz, 1964, pág. 738, con las conclusiones del Procurador General Aydalot.

indirecto encuentra su fuente y el accidente no puede ser mutilado arbitrariamente. Para apreciar la responsabilidad del tercero que es encauzado por la acción del perjudicado indirecto hay que referirse, evidentemente, al accidente tomado en su conjunto. El evento original comparte un número cierto de circunstancias de las cuales los demandantes no pueden desligarse. En el caso ante nos una de ellas lo constituye la falta o negligencia de la víctima o perjudicado directo.

## VIII

Reconocemos que, de primera intención, no resulta fácil el poder percatarse de la diferencia entre ambas posiciones. Si examinamos más a fondo la cuestión planteada, sin embargo, nos podremos dar cuenta del hecho de que la posición sustentada por la mayoría —a los efectos de que "no puede reducirse la indemnización concedida a un demandante a base de la negligencia comparada en que incurriera otro codemandante"— no sólo nos lleva a un resultado erróneo sino que a uno contrario a los principios de equidad y justicia que han motivado a la doctrina en general y a este Tribunal, en particular, a extender la norma de responsabilidad solidaria a los causantes de un daño.

Recordaremos que el tribunal de instancia valoró los daños sufridos por la joven Molina Caro (perjudicada directa) en la suma de $40,000 y los de su señora madre (perjudicada indirecta) en la suma de $10,000, actuación que no fue revisada por la parte demandante.

Si se resuelve que la joven Molina Caro incurrió en un 50% de negligencia comparada tendríamos —*bajo la posición asumida por la mayoría*— que la menor tendría derecho, en primera instancia, a recibir la mitad de los $40,000, esto es, la cantidad de $20,000 y la madre la suma íntegra de $10,000. Hay que recordar, sin embargo, que la parte demandada tiene el "derecho de nivelación". *Ramos v. Caparra*

*Dairy, Inc.*, ante. Ello significa que dicha parte tendría el derecho a recobrar de la menor el 50% de lo pagado a la madre, por lo que la menor recibiría la suma neta de $15,000.

Ello de momento, repetimos, parece bien. Pero, ¿y qué si se determinara que la menor fue responsable en un 90%?

El resultado, *al amparo de la posición de la mayoría*, sería un absurdo. Si aplicamos la norma de *Torres Pérez v. Medina Torres*, ante, a esta situación la menor tendría derecho a recibir, *de primera instancia*, la suma de $4,000 (el 10% de los $40,000.00); la madre continuaría recibiendo sus $10,000. Pero, al "nivelar", la parte demandada tendría *derecho a recobrar* de la menor el 90% de los $10,000 pagados a su madre, esto es, la suma de $9,000. *El resultado final sería que la menor —perjudicada directa— quedaría debiéndole a la parte demandada la suma de $5,000*. No creemos que esa situación ni es la más correcta ni la más justa.

Por el contrario, *al amparo de nuestra posición*, cada una de dichas codemandantes —no importa el por ciento de negligencia que se le atribuya a la joven Molina Caro— recibiría una suma de dinero en proporción directa a los daños que recibió.

## IX

Por todas las razones antes expresadas, expediríamos el auto y dictaríamos sentencia modificatoria de la dictada por el tribunal de instancia dictaminando que la codemandante Molina Caro incurrió en un 50% de negligencia en el accidente en que se vio envuelta *y disponiendo que la cantidad de $10,000 concedida a su señora madre por concepto de angustias mentales sea igualmente reducida en dicho por ciento de negligencia.*