ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **CARMEN A. BAEZ MEDINA**<br><br>**SANTOS A. NIEVES CAEZ**<br><br><br>**EXPARTE** | KLAN202300274 | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>**K DI2013-0990 (703)**<br><br><br>Sobre: **DIVORCIO** |

Panel integrado por su presidente el juez Rodríguez Casillas, el juez Marrero Guerrero y el juez Pérez Ocasio.[1]

Pérez Ocasio, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2024.

Comparece ante nos, la señora Carmen A. Báez Medina, en adelante Báez Medina o apelante solicitando que revisemos la *"Resolución"* [2] emitida por el Tribunal de Primera Instancia de San Juan, (en adelante TPI-San Juan), el 2 de febrero de 2023, que a su vez fue notificada el 7 de febrero de 2023. En la misma, se determinó "*No Ha lugar*" a la contención de que se le acreditaran en crédito la mitad de los pagos de la hipoteca. Posteriormente, la parte apelante presentó una "*Solicitud de Determinaciones de Hechos Adicionales" y "Reconsideración*" el 22 de febrero de 2023, que fue declarada "*No Ha Lugar*" por el TPI- San Juan el 27 de febrero de 2023 y notificada el 6 de marzo de 2023. La parte apelada, Santos A. Nieves Cáez, en adelante el apelado o Nieves Cáez, compareció ante este Tribunal el 13 de octubre de 2023.

---

[1] Véase Orden Administrativa OATA-2023-131del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Ana M. Mateu Meléndez.

[2] Nota: el TPI-San Juan llamó a dicha disposición "*Resolución*", no obstante, el Foro a *quo* dispuso de la totalidad de los asuntos ante sí, por lo que se configura como una *Sentencia.*

Número Identificador
SEN2024_____

Por los fundamentos que expondremos a continuación, *confirmamos* al TPI- San Juan en el recurso de epígrafe.

## I.

Los hechos se remontan para el año 2014 aproximadamente, cuando Báez Medina estuvo casada con Nieves Cáez, mediante el régimen de Sociedad Legal de Gananciales, en adelante SLG. La *Petición* de Divorcio Consentimiento Mutuo, en adelante *Petición*, fue presentada el 1 de agosto de 2013 y dicho vínculo fue declarado roto y disuelto mediante sentencia final y firme dictada el 8 de agosto de 2013 según surge de la *"Resolución"*.[3] Surge de la *Petición*,[4] que durante el matrimonio se procrearon dos (2) hijos y que, al momento del divorcio, la hija mayor, ya habría advenido a la mayoría de edad, más no así el hijo menor.

Según se desprende de las estipulaciones de la *Petición de Divorcio*, el apelado continuaría pagando la hipoteca que gravaba la residencia principal, configurándose como "Hogar Seguro" hasta que su hijo (S.N.B.) en ese momento, menor de edad, adviniera a la mayoría de edad.[5] Toda vez que el hijo menor de edad advendría a la mayoría de edad el 24 de enero de 2014, el apelado continuó pagando la residencia por aproximadamente seis (6) meses posteriores al divorcio según lo estipulado. Este pago por el cumplimiento de la hipoteca de la residencia principal equivaldría al pago mensual de una pensión alimentaria por la cantidad de $915.00, más el pago del plan médico.

Se desprende de la determinación en la *"Resolución"* emitida por el TPI-San Juan, que "[s]e estableció que por ser esta la pensión, Nieves Cáez no tendría créditos por estos pagos a la hipoteca".[6] Luego de que se cumpliera la mayoría de edad del hijo del extinto

---

[3] Apéndice del Recurso de Apelación, Anejo I pág.000002-005.
[4] *Id.*, Anejo IV-V, pág.000114-119.
[5] *Id.*, Anejo V, pág.000117.
[6] Apéndice del Recurso, Anejo I, pág.000002.

matrimonio, la obligación de pagar la hipoteca como "Hogar Seguro" del hijo menor Nieves Cáez cesaría.[7] No obstante, el apelado continuó efectuando los pagos de la hipoteca hasta febrero del año 2019.[8]

Como parte de las estipulaciones de la *Petición* de divorcio, ambos peticionarios compartirían en partes iguales el pago del préstamo por un término máximo de un (1) año. A su vez, ambos realizarían las gestiones para vender o para que la señora Báez Medina adquiriera la participación del apelado en un término no mayor de sesenta (60) días.[9] Según surge de la propia estipulación de la *Petición* de divorcio, se pactó expresamente:

[...]

> (d) Si por alguna razón uno de los copropietarios no efectuara la mitad del pago que le corresponde con respecto al préstamo hipotecario, **el otro copropietario podrá aportar dicha parte con tal de no afectar el crédito, ni poner en riesgo la propiedad, pero esa aportación se considerará un crédito que le será retribuido al momento de la venta de la propiedad descontando dicha cantidad de la parte del producto de la venta del copropietario (a) que falló en pagar**.[10] (énfasis suplido).

El apelado incumplió algunos pagos de la hipoteca. En el año 2017 incurrió en pago tardío y tuvo que pagar una penalidad de $113.38.[11] Así mismo, para el año 2018 incurrió en una penalidad de $94.33 y para el año 2019, hasta mayo del mismo año pagó $179.15 en concepto de penalidades o "*Late Fees*". Cabe subrayar, que durante el período comprendido desde el año 2014 hasta el año 2019, *la apelante no realizó pago alguno al préstamo hipotecario*, y así se desprende como un hecho incontrovertido en la "*Resolución*".[12]

---

[7] *Id.*, Anejo IV, pág. 000117.
[8] *Id.* Anejo I, pág. 000003.
[9] *Id.*, Anejo IV, pág.000117.
[10] *Id*, Anejo V, pág.000118.
[11] *Id.* Anejo 1, pág. 000003.
[12] Apéndice del Recurso Anejo I, pág.000004. (Énfasis suplido).

Finalmente, el 12 de febrero de 2021,[13] las partes pudieron llevar a cabo la venta de la propiedad. Así las cosas, Nieves Cáez reclamó un crédito a su favor por los pagos efectuados desde *el año 2014 hasta el año 2019.* La obligación de la hipoteca por Nieves Cáez, era pagar hasta el 24 de enero de 2014, fecha en que su hijo advendría a la mayoría de edad. Posterior a esta fecha, la obligación de pago del préstamo hipotecario era vinculante a los dos.

La controversia surge cuando Nieves Cáez solicita los créditos a su favor por los pagos emitidos durante los años previos a la venta de la propiedad. Según se desprende de la *"Resolución"* emitida por el Foro Primario, la alegación de que Nieves Cáez no evidenció la procedencia del pago a los créditos hipotecarios no fue controvertida por la parte apelante ante el Foro Primario.[14]  El TPI- San Juan determinó en su *"Resolución"* que Báez Medina *no realizó pago alguno*, que, aunque lo argumentó, *no lo demostró ni lo evidenció.*[15]

Emitida la *"Resolución"* el 2 de febrero de 2023 y notificada el 7 de febrero de 2023, la apelante solicitó el 22 de febrero de 2023 una *"Solicitud de Determinaciones de Hechos Adicionales y Reconsideración"* (sic), que fue declarada *"No Ha Lugar"* por el TPI-San Juan el 27 de febrero de 2023 y notificada el 6 de marzo de 2023.

Báez Medina interesaba que se añadieran las siguientes determinaciones de hechos:

1. Los pagos efectuados por el señor Nieves desde el mes de agosto de 2013 hasta el mes de enero de 2014 se realizaron como pago de pensión alimentaria.
2. La cantidad depositada en la cuenta conjunta fue $48,900.31.
3. Del pago mensual de la hipoteca $716.00 mensuales se aplicaba una parte al principal, una parte a los intereses y otra parte a la cuenta (sic) plica. (Exhibit 8).

---

[13] Si bien es cierto que la *"Resolución"* del TPI-San Juan hace alusión a la venta de la propiedad el 12 de abril de 2021, lo cierto es que los alegatos de ambas partes hacen referencia a la venta de la propiedad como el 12 de febrero de 2021.
[14] Apéndice del Recurso, Anejo I, pág.000004.
[15] *Id.*

4. La cantidad aplicada a los intereses desde febrero a diciembre de 2014 fue $3,160.56 (Id).

5. La cantidad aplicada a los intereses en el año 2016 fue $2,558.10 (Id).

6. La cantidad aplicada a los intereses en el año 2017 fue $2,228.72 (Id).

7. La cantidad aplicada a los intereses en el año 2018 fue $1,879.02 (Id).

8. La cantidad aplicada a los intereses en el año 2019 fue $544.93 (Id).

9. La entidad LearnTek nunca ha sido una corporación desde su creación hasta el presente.

10. El señor Nieves es miembro de LearnTek y, por lo tanto, dueño de la misma. Actualmente, es el único miembro de la CRL LearnTek. (Exhibit III).

11. El Banco Popular de PR no puede identificar de que cuentas se efectuaron los pagos de la hipoteca. (Exhibit VII).

12. El señor Nieves nunca fungió como secretario o presidente de LearnTek.

13. El señor Nieves proveyó un Certificado de Resolución Corporativa de donde surge que era Presidente de LearnTek. Mediante dicha Resolución la CRL lo autoriza a cobrar cualquier pago efectuado por ella, desde el 2013 hasta el presente, para beneficio de cualquiera de las cuentas de las cuales el señor Nieves reclamó créditos en este caso, que incluye la hipoteca. [16]

El 5 de abril de 2023, la apelante recurre ante esta Curia, apelando la "*Resolución*" emitida y notificada por el Foro Primario el 2 de febrero de 2023 y notificada el 7 de febrero de 2023.[17] En su recurso, la apelante le imputa al TPI-San Juan sendos señalamientos de errores:

> **PRIMERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL IMPONERLE EL PESO DE LA PRUEBA A LA COMPARECIENTE A PESAR DE HABER EMITIDO UNA RESOLUCIÓN MEDIANTE LA CUAL DETERMINÓ LO CONTRARIO. CON ESE PROCEDER PUSO EN DESVENTAJA A LA COMPARECIENTE Y LA PRIVÓ DE UN JUICIO JUSTO EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

---

[16]Apéndice del Recurso, Anejo I, II, pág.000006,07.
[17]Nota: el TPI San Juan llamó a dicha disposición "*Resolución*", no obstante, el Foro a *quo* dispuso de la totalidad de los asuntos ante sí, por lo que se configura como una *Sentencia*. Recurso de Apelación pág. 5, ¶21.

**SEGUNDO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO HABER EFECTUADO DETERMINACIONES DE HECHO ADICIONALES.

**TERCERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE NO EXISTE CONTROVERSIA EN RELACIÓN A QUE FUE EL SEÑOR NIEVES QUIEN EFECTUÓ LOS PAGOS DE LA HIPOTECA DESDE FECHO *(SIC)* DE 2014 AL 2019.

**CUARTO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LAS PARTES NO UTILIZARON LOS MECANISMOS DE DESCUBRIMIENTO DE PRUEBA DISPUESTOS POR LAS REGLAS DE PROCEDIMIENTO CIVIL.

**QUINTO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE NO EXISTE EVIDENCIA EN EL RÉCORD DE QUE LA ENTIDAD LEARNTEK FORMA PARTE DE LA SOCIEDAD LEGAL DE GANANCIALES ENTRE LAS PARTES.

**SEXTO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONFUNDIR O UTILIZAR INDISTINTAMENTE LOS TÉRMINOS "ADMINISTRADOR" Y "MIEMBRO" DE UNA CORPORACIÓN DE RESPONSABILIDAD LIMITADA O "LLC".

**SÉPTIMO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDERLE AL SEÑOR SANTOS UN CRÉDITO POR LA MITAD DE LA TOTALIDAD DE LOS PAGOS REALIZADOS Y NO SOLO POR EL PRINCIPAL.

La parte apelada, compareció ante este Tribunal el 13 de octubre de 2023 y con el beneficio de las partes, procedemos a disponer del Recurso ante nos.

## II.

**A. Apelación**

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013).

Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de

instancia con nuestras propias apreciaciones. *Íd.*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959);

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *BPPR v. Gómez Alayón*, 2023 TSPR 145 (2023), 213 DPR ____ (2023); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012).

Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *BPPR v. Gómez Alayón*, supra; *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253,273 (2021); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *BPPR v. Gómez Alayón, supra*; *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd. en la pág. 211.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra.

**B. Debido Proceso de Ley**

La Constitución de Puerto Rico reconoce una serie de derechos, incluido entre estos el debido proceso de ley. Const. ELA, Art. II, 1 LPRA sec. 7. Esta garantía tiene dos (2) vertientes – la sustantiva y la procesal.

La vertiente sustantiva del debido proceso de ley busca proteger los derechos fundamentales de la persona, mientras que la vertiente procesal le impone al Estado la obligación de garantizar un proceso justo y equitativo cuando se interfiera con los intereses de libertad y de propiedad del individuo. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 35 (2010).

La jurisprudencia normativa ha identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. *Pueblo v. Pagán Rojas et al.*, 187 DPR 465, 480 (2012); *Garriga Villanueva v. Mun. San Juan*, 176 DPR 182, 197 (2009).

Ahora bien, parte de las funciones revisoras de este Tribunal lo faculta a evaluar si los foros administrativos o inferiores han cumplido con los mandatos constitucionales que gobiernan su función, como, por ejemplo, que respeten y garanticen los requerimientos del debido proceso de ley que le asiste a las partes. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012); *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1015 (2008).

Así, "[l]a revisión judicial garantiza a los ciudadanos un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Comisión Ciudadanos v. G.P. Real Property*, supra, en la pág. 1015.

**C. Deferencia Judicial**

Es bien sabido que el Foro Primario es el que tiene la oportunidad de ver y observar a los testigos y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, ademanes, dudas y vacilaciones, e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. *Pueblo v. Torres Martínez*, 200 DPR 834, 857-858 (2018); *López v. Dr. Cañizares*, 163 DPR 119, 136 (2004); *Graciani Rodríguez v. Garaje Isla Verde, LLC*, 202 DPR 117,127 (2019); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012)*; Argüello v. Argüello*, 155 DPR 62 (2001). Consecuentemente, **los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.** *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ____ (2023); *Super Asphalt Pavement Corp. V. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico,* 206 DPR 803, 820 (2021)*; Gómez Márquez v. Periódico el Oriental Inc.,* 203 DPR 783, 784 (2020); *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2008). *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 623 (2002). (Énfasis suplido).

El fundamento principal a esta deferencia es que el juzgador del Foro Primario tuvo la oportunidad de observar toda la prueba presentada, y por ende se encuentra en mejor situación que el Tribunal Apelativo para considerarla. *Pueblo v. González Rivera*, 207 DPR 846, 848 (2021); *Argüello v. Argüello*, supra, en la pág. 78.

De esta manera, *"**la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo**". Pueblo v. Hernández Doble*, 210 DPR 850, 865 (2022); *Ortiz Ortiz v. Medtronic Puerto Rico Operations*, Co. 209 DPR

759,779-780 (2022) *Gómez Márquez v. Periódico el Oriental Inc.,* 203 DPR 783,793 (2020) (Énfasis suplido). "***Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida,*** no exista base suficiente que apoye su determinación". *Santiago Ortiz v. Real Legacy Assurance Company, Inc.* 206 DPR 194, 220 (2021). (Énfasis suplido).

Así mismo, el Tribunal Supremo de Puerto Rico ha enfatizado que [c]uando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad que le mereció [...] este Tribunal ha expresado que ***"[E]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba".*** *Graciani Rodríguez v. Garage Isla verde, supra*, en la pág. 129. (Énfasis suplido).

Cónsono con los pronunciamientos del Máximo Foro de Puerto Rico se ha establecido que:

> "[e]n consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa".
> *Pueblo v. Pérez Delgado*, 2023 TSPR 35, 211 DPR ___ (2023).

Así pues, sentencia nuestro Más Alto Foro que: "Ante la presunción de corrección que revisten las determinaciones del foro primario, quien desee impugnar las mismas deberá colocar al tribunal revisor en posición de atender correctamente sus planteamientos sobre la apreciación y la credibilidad de la prueba oral desfilada". *Id.* en la pág. 11.

En síntesis, nuestro Más Alta Curia ha afirmado numerosas veces que "los tribunales tienen amplia discreción en la apreciación de la prueba pericial pudiendo aun, adoptar su propio criterio en la apreciación o evaluación de la misma y hasta descartarla, aunque resulte técnicamente correcta". *Pueblo v. Hernández Doble,* supra*,* pág. 865. *Pueblo v. Perez Delgado,* 2023 TSPR 35*;* 211 DPR ___ (2023); *Dye-Tex Puerto Rico, Inc. V. Royals Ins. Co. Of Puerto Rico, Inc.*, 150 DPR 658, 663 (2000) *Culebra Enterprises Corp. v. ELA,* 143 DPR 935, 952 (1997); *Valldejuli Rodríguez v. AAA*, 99 DPR 917, 921 (1971); *Prieto v. Maryland Casualty Co.*, 98 DPR 594, 623 (1970).

Por otro lado, es principio cardinal de nuestro ordenamiento jurídico que el peso, o la responsabilidad, de probar o presentar prueba que sustente su postura, recae sobre aquel que promueve una acción. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 913 (2011); E.L. Chiesa, *Reglas de Evidencia de Puerto Rico 2009, Análisis por el Prof. Ernesto L. Chiesa* (Publicaciones JTS, 2009) pág. 98. Con relación a esto, la Regla 110 de las Reglas de Evidencia, 32 LPRA Ap. IV R. 110, dispone que el juzgador de los hechos deberá evaluar la evidencia presentada, sujetado a los siguientes principios:

(A)  El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

[…]

Esto responde al entendido jurídico de que el peso de la prueba es una obligación que tiene la parte que afirma la cuestión en controversia, y de convencer al juzgador sobre la forma particular en que ocurrieron los hechos que alega. *Rivera Figueroa v. The Fuller Brush Co., supra*, en la pág. 913. ***Nuestro sistema evidenciario impone la obligación inicial o primaria de presentar evidencia a la parte que sostiene la afirmativa de la cuestión en controversia***. R. Emmanuelli Jiménez, Prontuario de Derecho

Probatorio Puertorriqueño, Segunda Edición, Ediciones Situm, 2005, pág. 148; E. L. Chiesa, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, Tomo II, Publicaciones J.T.S., 2005, pág. 1003. (énfasis suplido).

Por otro lado, el Tribunal de Apelaciones no debe elaborar sobre la pasión, el prejuicio y la parcialidad **si no puede fundamentar que esto ocurrió en el caso ante su consideración**. Quien señale que el juzgador actuó mediando pasión, prejuicio o parcialidad debe sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia. *Gómez Márquez v. Periódico el Oriental Inc.,* 203 DPR 783,785 (2020).

**D. Descubrimiento de Prueba**

El procedimiento para llevar a cabo el descubrimiento de prueba está regido por las Reglas de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R 23.1. El descubrimiento de prueba es "la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia que tanta mina la fe del pueblo en el sistema judicial". *McNeil Healthcare, LLC v. Municipio de Las Piedras II*, 206 DPR 659, 672 (2021), *Rivera et al. v. Arcos Dorados et al., supra,* en la pág. 321.; *Alvarado v. Alemany*, 157 DPR 672, 682 (2002). El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias [...] para hacer valer sus derechos". (Citas omitidas).

Los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, por lo que los foros apelativos no deben intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma

procesal o sustantiva. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 154–155 (2000).

Este criterio también concierne a la intervención de los foros apelativos con las determinaciones interlocutorias de los tribunales de primera instancia. *McNeil Healthcare, LLC v. Municipio de Las Piedras II*, supra, pág. 672. *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

De la misma forma, en términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Además, *Torres González v. Zaragoza Meléndez*, supra, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334.

Es por ello, que nuestro Máximo Foro Judicial ha reiterado: **"que el alcance del descubrimiento de prueba es amplio y liberal"**. *Cruz Flores v. Hospital Ryder Memorial Inc.*  210 DPR 465, 29 (2022). *McNeil Healthcare v. Mun. Las Piedras II,* supra, pág. 672; *Scotiabank v. ZAF Corp.* et al., 202 DPR 478, 490 (2019); *Casasnovas* et al. *v. UBS Financial* et al.*,* 198 DPR 1040, 1054 (2017).  (Énfasis suplido).

## E.  Determinaciones de Hechos Adicionales

Como parte de las Reglas de Procedimiento Civil, 32 LPRA Ap. V R. 43.1, se incluye las Determinaciones de Hechos Adicionales. En lo pertinente, la referida regla dispone:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, **el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias**, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. [...]

32 LPRA Ap. V, R.43.1. (Énfasis suplido).

Consecuentemente, la razón de ser de la solicitud al tribunal sentenciador para que determine hechos específicos y consigne sus conclusiones de derecho. Se ha dicho que se le debe brindar al juez de instancia una oportunidad para que éste quede satisfecho de que ha atendido todas las controversias de forma propia y completa; además, permitirles a las partes y al foro apelativo estar completamente informados de la base de la decisión o dictamen emitido por el tribunal primario. *Carattini v. Collazo Syst. Analysis, Inc.* 158 DPR 345, 356 (2003).

En lo relativo a la moción de determinaciones de hechos adicionales, hemos de recordar que dicho mecanismo, utilizado legítimamente, va dirigido a la consecución de un ideal de justicia exento de errores. *Carattini v. Collazo Syst. Analysis, Inc.,* supra, pág. 357; *Roldán v. Lutrón, S.M., Inc.*, 151 DPR 883, 890-891 (2000). Si bien es cierto que este mecanismo ayuda a una función revisora adecuada, el Tribunal Supremo de Puerto Rico ha expresado que:

> "Hemos advertido, además, que de la letra clara de la citada Regla 43.3 se desprende y resulta obvio que el tribunal de instancia no está obligado a hacer determinaciones de hecho y de derecho adicionales luego de ser solicitadas por una o más partes; ello, de estimar que estas no proceden".
> *Blás v. Guadalupe*, 146 DPR, 267, 319 (1998).

Por otro lado, el Tribunal Supremo ha enfatizado que "***Ciertamente, el juez tiene discreción para denegar tal moción, pues, en esencia, sólo procede para corregir errores manifiestos de hechos o de derecho***". *Carattini v. Collazo Syst. Analysis, Inc., supra*, en la pág. 358. (Énfasis suplido)

**F. Sociedad Legal de Bienes Gananciales y Comunidad Post Ganancial**

La Sociedad Legal de Bienes Gananciales comienza el mismo día en que se celebra el matrimonio.[18] Ésta es una entidad económica familiar *sui géneris* que, por ser su propósito principal y razón de ser diferentes a las de otras empresas, comunidades o sociedades regulares; no tiene el mismo grado de personalidad jurídica que las sociedades ordinarias o entidades corporativas. *García v. Montero Saldaña*, 107 DPR 319, 322 (1978); *Reyes v. Cantera Ramos, Inc.*, 139 DPR 925, 928–929(1996). Pues según expresa nuestro Más Alto Foro:

> "*Contraído el matrimonio bajo el régimen de la sociedad legal de gananciales, la gestión económica que realiza cada cónyuge se hace en beneficio de dicha sociedad y no para beneficio individual.*" (Citas omitidas). *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978, (2010)

El artículo 1308 del Código Civil de Puerto Rico, 1930, en adelante Código Civil,[19] establece como obligaciones de la SLG, lo siguiente, pero sin limitarse:

> (1) **las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges**; (2) **los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales**; (3) las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges;[20] (4) las reparaciones mayores o menores de los bienes gananciales; (5) el sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges, y (6) los préstamos personales en que incurra cualquiera de los cónyuges. 31 LPRA, sec. 6981.
> *Muñiz Noriega v. Muñoz Bonet*, supra, pág. 982. (Énfasis suplido).[21]

Ahora bien, estas deudas y obligaciones no deben catalogarse gananciales luego de presentada la demanda de divorcio. Señala el Tribunal Supremo de Puerto Rico que "[e]l divorcio lleva consigo la

---

[18] Se hace referencia a los artículos del Código Civil de Puerto Rico, 1930, 31 LPRA, hoy, derogado ya que son los artículos aplicables a los hechos del caso. Cód. Civ. PR 31 LPRA sec. 3661.
[19] *Id.*
[20] Las reparaciones mayores no serán a cargo de la sociedad. 31 LPRA sec. 3661.
[21] Hacemos constar, que a pesar de que los hechos ocurrieron bajo el Código Civil,1930, 31 LPRA 3661, hoy derogado, el Código Civil, 2020, 31 LPRA sec. 6981, mantuvo inalterado las disposiciones de la Responsabilidad de la SLG en su artículo 520, 31 LPRA sec. 6981.

ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges".[22]

De esa manera, surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente y alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Montalván v. Rodríguez*, 121 DPR 411, 421 (2004)

Cuando la comunidad de bienes postganancial no es liquidada simultáneamente en el divorcio, adviene un período en el que se mezclan y confunden provisionalmente los bienes de los excónyuges, ya sea porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren pérdidas y gastos.

Así, la presunta igualdad de cuotas está sujeta a ser rebatida por una prueba pertinente. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 707 (2022). El goce exclusivo de uno de los comuneros afecta el derecho de disfrute que tiene el otro comunero sobre los bienes que pertenecen a estos. Id. en la pág. 707

Adviértase que "aun cuando se mantiene la indivisión de la comunidad de bienes postganancial por cierto tiempo después del divorcio, ***su liquidación no tiene que ser automáticamente por partes iguales***. En estos casos, la presunción legal que dispone nuestro ordenamiento civilista de que esa división debe hacerse en partes iguales, ***la puede rebatir cualquiera de los excónyuges si se demuestra que el aumento en el valor del bien común o en el nivel de producción de los frutos industriales, se debe a la gestión y trabajo de uno solo de los comuneros.*** *Montalván v. Rodríguez,* supra, pág. 439. (Énfasis suplido).

**III.**

---

[22] 31 LPRA sec. 381

La parte apelante comparece ante esta Curia solicitando que dejemos sin efecto la determinación del TPI-San Juan sobre concederle un crédito a Nieves Cáez y que ordene a que se les entregue la mitad del dinero depositado a cada uno. En la alternativa, que reconsideremos la cuantía y determinemos aplicarle el crédito de $4,296.00 a la apelante y se le acredite a Nieves Cáez la mitad de la cantidad aplicada al pago del principal del préstamo hipotecario. Por otro lado, también nos solicita la *revocación de la sentencia* emitida por el TPI-San Juan, la *desestimación de la demanda* o *la devolución del caso* para la continuación de los procedimientos.

La apelante Báez Medina nos plantea siete (7) errores que a continuación discutiremos.

## A. Peso de la Prueba y Violación del Debido Proceso de Ley

Como *Primer Error*, Báez Medina señala que se equivocó el TPI-San Juan, al imponerle el peso de la prueba a la apelante a pesar de haber emitido una resolución mediante la cual determinó lo contrario. Alega que con ese proceder puso en desventaja a la compareciente y la privó de un juicio justo en violación al debido proceso de ley. *No le asiste la razón.*

Los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. El fundamento principal a esta deferencia es que el juzgador del Foro Primario tuvo la oportunidad de observar toda la prueba presentada, y por ende se encuentra en mejor situación que el Foro Apelativo para considerarla. *Argüello v. Argüello*, supra, en la pág. 78.

Aduce la parte apelante que según se presumía que la entidad de LearnTek LLC era ganancial, toda vez que Nieves Cáez trabaja desde el año 2013 en una compañía, registrada por su único miembro el señor Arturo González, conocida como "Learntek,

LLC",[23] por lo que le correspondía a Nieves Cáez rebatir dicha presunción de acuerdo con las Reglas de Evidencia, supra. Sin embargo, más que una presunción, esta alegación no fue sustentada con evidencia por parte de la apelante.[24] De la propia "*Resolución*" se desprende que las alegaciones se basaron en especulaciones que no se sustentaron en evidencia alguna. No se configura una violación al debido proceso de ley. Toda vez que siendo ella la promovente era quien tenía el peso de la prueba ante el Tribunal. Del expediente del caso de marras no surge evidencia que pruebe las alegaciones de Báez Medina. Sólo surgen declaraciones contradictorias e incompletas, las cuales no demuestran que el TPI-San Juan la haya puesto en desventaja y la privaran de un juicio justo en violación del debido proceso de ley. *No se cometió el error señalado.*

**B. Determinaciones de hechos y Mecanismos de Prueba**

La apelante arguye en el *Segundo y Cuarto Error,* que el TPI-San Juan erró al no haber efectuado determinaciones de hecho adicionales ni al determinar que las partes no utilizaron los mecanismos de descubrimiento de prueba dispuestos por las Reglas de Procedimiento Civil. *No le asiste la razón.*

De ordinario, los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento. En este caso, ambas partes llevaron a cabo el descubrimiento de prueba según consideraron conveniente.[25] Ciertamente, el juez tiene discreción para denegar tal moción, pues, en esencia, sólo procede para

---

[23]Nota: La Compañía "Learntek" fue creada por Arturo González. El señor González fue el Administrador y Presidente de la compañía desde el 2013 hasta el 2019.

[24] Apéndice del Recurso de Apelación, Anejo I, pág.000005.

[25] Apéndice del Recurso, Anejo XV, pág.000039.

Nota: según surge de la "Transcripción del Juicio en su fondo", pág. 14 líneas 13-20, pág. 15, líneas 1-20, pág. 16, línea 1, se desprende que las partes no pudieron llegar a acuerdos para estipular hechos, que forman parte de la solicitud que hizo la apelante en la "*Moción en Solicitud de Hechos Adicionales*". Por lo que estos fueron dirimidos expresamente y en corte abierta por el TPI-San Juan.

corregir errores manifiestos de hechos o de derecho. *Carattini v. Collazo Syst. Analysis, Inc.* supra a la pág. 358.

Además, de las trece (13) determinaciones de hecho solicitada por la parte apelante, cinco (5) de ellas se encuentran contenidas expresamente en la "*Resolución*" (1,2,9,11,12). Sobre las determinaciones solicitadas a los intereses, ya había sido resuelto en el juicio en su fondo, según se desprende de la Transcripción del Juicio en su Fondo de 1 de febrero de 2023 (3,4,5,6,7,8). De la propia transcripción surge que el TPI- San Juan le ordenó múltiples veces que estipularan los créditos, y que ambas partes incumplieron su orden. Por lo tanto, fue el TPI-San Juan quien, a través del testimonio vertido del apelado y la prueba documental aquilatada, adjudicó las determinaciones emitidas en la "*Resolución*".[26]

Sobre las alegaciones dirigidas a LearnTek, LLC, surgen como especulaciones por parte de la apelante (9,12,13). La prueba desfilada ante el TPI- San Juan, sostienen que Nieves Cáez no fue dueño, presidente, ni ostentó ningún puesto de autoridad durante el año final del matrimonio. Este asunto no fue controvertido en el TPI-San Juan, ni se nos ha colocado a nosotros en posición para determinar lo contrario. Por lo que el TPI-San Juan no tenía por qué acoger una moción de "Solicitud de Determinaciones de Hechos Adicionales y Reconsideración" (sic) ni reconsiderar la misma basada en especulaciones sin pruebas ni evidencia. *No se cometieron los errores señalados.*

## C. Pagos de la Hipoteca, evidencia de pagos y créditos post gananciales

De igual forma procederemos a discutir los *Errores Tercero, Quinto, Sexto y Séptimo* por estar intrínsecamente atados. Señala la apelante que erró el TPI- San Juan al determinar que no existe controversia en relación con que Nieves Cáez fue quien efectuó los

---

[26] Transcripción pág. 15, líneas 13-20.

pagos desde el año 2014 hasta el año 2019. De la misma forma Báez Medina indica que no existe evidencia en récord de que la entidad LearnTek, LLC forma parte de la Sociedad Legal de Gananciales entre las partes. Por otro lado, señala que erró el TPI- San Juan al concederle a Nieves Cáez un crédito por la mitad de la totalidad de los pagos realizados y no solo el principal. *No le asiste la razón.*

Señala la parte apelante, que "el hecho de que la compareciente no haya efectuado los mismos, no significa que Nieves Cáez los haya hecho".[27] Indubitablemente, la apelante no realizó los pagos del crédito hipotecario y dicha evidencia fue prueba aquilatada por el Foro de Instancia y no fue controvertida. Ahora plantea que, no necesariamente fue Nieves Cáez quien los haya hecho. Aduce la apelante que, por el apelado, ser el actual y único miembro de Learntek, LLC desde enero del año 2019, se debe retrotraer a todos los pagos emitidos a los créditos de la hipoteca y se debe reputar en carácter ganancial, por lo que no procede un crédito a favor del apelado. No obstante, lo anterior, se desprende de la propia "*Resolución*" y de la Apelación que nos ocupa, que no se le podrían acreditar los "*late charges*" a Nieves Cáez por los pagos tardíos que el realizó.[28] Cabe destacar, que la apelante tampoco realizó ni subsanó esos pagos, ni los pagos tardíos para evitar los "*Late Fees*". Ante la apreciación del TPI- San Juan, quien entendió este hecho incontrovertido, no nos corresponde alterar su determinación porque simplemente la apelante se basó en una "alegación" sin fundamento.

Por otro lado, insiste en que la entidad LearnTek, LLC forma parte de la SLG porque fue fundada mientras todavía estaban casados. Sin embargo, y hasta de la propia evidencia que la parte apelante proveyó, surge que la misma fue fundada por el señor

---

[27] Recurso de Apelación, pág. 17.
[28] Recurso de Apelación, pág. 2.

Arturo González, y que Nieves Cáez era empleado.[29] Que se mantuvo en el mismo puesto hasta el año 2019, cuando advino a ser administrador.[30] Nieves Cáez se mantuvo en el mismo puesto como empleado contable hasta el año 2019 y de la propia certificación emitida del Departamento de Estado, Nieves Cáez no figuraba ni como presidente, accionista, secretario ni actuaba en calidad de ninguno de esos puestos.[31] Así mismo, la apelante incide en que para algunas cosas LearnTek es una "corporación" y para otras una "LLC". Arguye la apelante que, como parte de las diferencias, los términos "administrador" y "miembro" se utilizan indistintamente entre las corporaciones o las LLC. Al momento en que Santos Cáez advino administrador en el 2019, el matrimonio estaba roto y disuelto, por lo que esta alegación es improcedente en derecho. Dicha aclaración surge de la "*Resolución*" y de la Transcripción oral del Juicio, de que la entidad LearnTek, es una LLC.[32]  Por lo que resulta forzoso concluir que es una entidad distinta de la SLG.[33] *No se cometieron los errores señalados.*

Al evaluar los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el TPI- San Juan actuó de conformidad con las normas que prevalecen en las materias que atendemos. *No se cometieron los errores señalados.*

**IV.**

Durante el procedimiento de divorcio las partes liquidaron todos sus bienes con excepción de la vivienda familiar. Esto, pues las partes acordaron permanecer en comunidad con respecto al inmueble hasta que su hijo llegara a la mayoría de edad, posteriormente debían hacer las gestiones para disponer de la propiedad.  No habiendo controversias en que Nieves Cáez emitió

---

[29] Apéndice del Recurso de Apelación, Anejo XX, pág.000104-105.
[30] *Id.*, Anejo XVII, pág.000046.
[31] *Id.*, Anejo I, pág.000104-105.
[32] *Id.*, Anejo I, pág.000002.
[33] Transcripción, pág. 25, líneas 3-9.

todos los pagos referentes al crédito hipotecario con dinero privativo, *no procede disminuirle el crédito a su favor.*

Luego de evaluar detenidamente el expediente que nos ocupa, justipreciamos que el Foro Primario no abusó de su discreción en la evaluación de la prueba ante sí. No hallamos sugerencia alguna en los documentos evaluados que indique error de derecho o abuso discrecional por parte del TPI- San Juan. De la misma manera, confirmamos la "*Resolución*" emitida. Así las cosas, *lo que procede es el crédito a favor del señor Medina Cáez sin deducirle ningún crédito a favor de la apelante, toda vez que los pagos fueron realizados con dinero privativo.*

## V.

Por los fundamentos que anteceden, *confirmamos al TPI- San Juan en su "Resolución" dictada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones